MARY SMITH, Plaintiff-Appellant, *v.* TERRY L. POWELL, Defendant-Appellee.

Fourth District No. 4—82—0624

Opinion filed October 18, 1982.

Warren E. Danz, P. C. of Peoria, for appellant.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Jeffrey W. Jackson, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On May 26, 1981, plaintiff brought suit in the circuit court of Macon County against defendant seeking recovery for personal injuries allegedly incurred in an April 26, 1979, collision between a vehicle being driven by her but stopped at the time and a semi-tractor trailer negligently operated by defendant. Upon defendant's motion setting up a defense of the statute of limitations, defendant was granted a summary judgment dismissing the case in bar of action. The trial court rejected plaintiff's assertion that the record showed a disputed question of fact as to whether defendant had waived the defense. Plaintiff appeals.

The only matter, other than the pleadings, before the court at the time of its entry of the summary judgment was the deposition testimony of plaintiff's attorney Warren Danz, and his prior affidavit. It revealed the following information. Mr. Danz had been an attorney at law for 11 years. He entered into an attorney-client relationship with plaintiff in June 1979, one month after the collision. A letter of representation was sent to defendant's insurer, Kemper Insurance Company, on June 22, 1979. On July 3, 1979, a response was received which did not discuss settlement, but said, "Please address all future correspondence to this office." Letters requesting discussion of the case were sent with medical bills and reports to the insurer on February 28 and April 9, 1980. In November of 1980, further medical reports were sent with a settlement demand. On March 26, 1981, a second letter was received from the insurer again making no settlement offer, but it said, "Please forward updated specials at this time."

The deposition further showed the following sequence of events. In late March or early April of 1981, attorney Danz spoke with JoAnn Greiner, an employee of the insurer, and indicated he wanted to discuss settlement if Greiner had an interest in doing so. Greiner said she was interested, but would need a statement from the plaintiff before she could evaluate the case. Danz said he would arrange for a statement quickly since time was running on the case. An appoint-

ment was arranged for the insurer to take the plaintiff's statement at Danz's office, but plaintiff failed to appear. Shortly before April 26, 1981, Danz again conversed with either Greiner or Chris Butler, and another appointment was then scheduled for plaintiff's statement to be taken on May 14, 1981. In answer to a question concerning this conversation, Danz testified:

"Of course, the problem is after the client missed the first appointment, I specifically talked to the insurance company, to Chris Butler or Joan Greiner, and they said that they would still work with me in negotiations *** try to negotiate a settlement, but the only problem was a matter of time in taking the statement. And they did agree to take it at a later date, that there would be no problem on this, which I interpreted to mean there would be no problem with the statute. And they were going to make an offer to me, and I'm sure the statement would not have been taken if that intention had not been there."

The deposition indicated plaintiff again failed to appear on May 14, 1981, but did give a statement to a representative of the insurer on May 15, 1981. According to Danz, shortly after the statement was taken Butler advised Danz she would send him a transcript and contact him concerning a settlement. Danz maintained that after the statement but prior to the filing of the suit, Danz made some calls to the insurer, but he did not recall to whom he spoke nor did he relate the substance of the conversation. Danz also stated that after the suit was filed, he had one more conversation with a representative of the insurer regarding the case but it only concerned the dates of the accident and the filing of the suit.

Unless waiver is applicable, the two-year statute of limitations for filing suits for personal injuries expired on Monday, April 27, 1981, two years and one day after the collision. (Ill. Rev. Stat. 1981, ch. 83, par. 15.) The standard for determining whether a defendant or his insurer has waived the statute of limitations has been clearly set forth by the supreme court as follows:

"The rule in this State and elsewhere, pertaining to waiver in a case of this kind, requires that the conduct of the party against whom such a waiver is claimed be such as to cause the other party to change his position by lulling him into a false security, thereby causing him to delay or waive the assertion of his rights to his damage. Negotiations for an adjustment of a claim which do not so justify the claimant in delaying action cannot estop the insurer from insisting upon a strict compliance with the conditions of the limitation. It is necessary and proper that

claims of this character be investigated, and the fact that the insurer negotiates with the claimant is in nowise conduct amounting to a waiver by estoppel unless there is contained in the negotiation that which is calculated to lull the claimant into a false security. [Citations.]" (*Dickirson v. Pacific Mutual Life Insurance Co.* (1925), 319 Ill. 311, 318, 150 N.E. 256, 259.)

The appellate court has also stated:

"If there is evidence of such conduct which exceeds mere investigation and negotiation, an issue is made for determination by the trier of the facts; if not, the defense may be disposed of by the court as a matter of law. [Citations.]" *Flagler v. Wessman* (1970), 130 Ill. App. 2d 491, 494, 263 N.E.2d 630, 632.

In recent years an increasing number of cases have been decided concerning waiver of the defense of the statute of limitations. The reported opinions present a wide array of factual situations with no single factor or combinations thereof clearly determinative.

The facts here provide none of the relatively objective factors which other decisions have considered in evaluating whether there was "lulling" conduct on the part of an insurer. Defendant did not concede liability here, either explicitly (*Wells v. Lueber* (1976), 43 Ill. App. 3d 973, 358 N.E.2d 293; *Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315), or implicitly (*Kinsey v. Thompson* (1963), 44 Ill. App. 2d 304, 194 N.E.2d 565; *Flagler*). No actual negotiations of a settlement amount took place before, let alone after, the expiration of the statute of limitations. (*Kinsey; Wells; Flagler; Suing v. Catton* (1970), 118 Ill. App. 2d 468, 254 N.E.2d 806.) No advance payments of any kind were made to the plaintiff. (*Marks v. City of Johnston City* (1974), 21 Ill. App. 3d 1089, 315 N.E.2d 342; *Wells; Jackson v. Hoover* (1974), 24 Ill. App. 3d 358, 321 N.E.2d 348; *Suing; Hurtt v. Davidson* (1980), 84 Ill. App. 3d 681, 406 N.E.2d 90.) The insurer did not encourage the plaintiff to delay the filing of the complaint. (*Jackson; Cassidy.*) Finally, plaintiff was not handicapped by lack of representation by counsel. *Flagler; Jackson; D'Urso v. Wildheim* (1976), 37 Ill. App. 3d 835, 347 N.E.2d 463.

The present situation is similar to that in *D'Urso*, which involved a statute of limitation expiration date of January 26, 1973. The insurer's contact with that plaintiff was limited to one phone conversation and two letters between the plaintiff's attorney and the insurer. In the latter part of November 1972, plaintiff's attorney spoke with an adjuster. The adjuster said that it would be necessary for plaintiff to be examined by a doctor in order to determine the extent of her injuries. The attorney informed the adjuster that the appointment

should be made immediately since the two-year limitation period would soon expire. The adjuster agreed to make the arrangements for the medical appointment and to contact the attorney upon receiving the medical report and discuss the settlement of the claim. The attorney said that he would take no further action in prosecuting the claim prior to being contacted by the adjuster. The adjuster expressly agreed with that procedure.

The *D'Urso* plaintiff's attorney received a letter on December 6, 1972, informing him of the doctor whom the plaintiff should see. The letter provided that the adjuster would notify the plaintiff regarding possible disposition of the claim after the doctor's report was received. Plaintiff's attorney sent a return letter indicating that from their conversation he expected a satisfactory settlement would be made and that therefore he would not take any other action until the adjuster received the doctor's report and contacted the attorney. The medical examination was conducted on December 14 or 15, 1972. After that date and prior to the expiration date, the adjuster neither contacted the attorney nor furnished a copy of the medical report. The court found that these facts showed only an investigation of a preliminary nature had been initiated by the insurance company. It noted that negotiations with a view towards compromise had not even begun.

■ Here, the only two letters which plaintiff's attorney received from defendant's insurer constituted merely a routine investigation of plaintiff's claim. The only substantive difference between this case and *D'Urso* is that prior to the expiration date, the insurer here agreed to an appointment with plaintiff after the expiration date. The statement was taken after the expiration date only because plaintiff failed to keep the first appointment. According to his deposition, plaintiff's counsel interpreted the statement of the insurer's agents that there would be no problem in taking the statement later as an indication the statute of limitations would not be used as a defense. However, this statement, even in the context it was allegedly made, would not create a factual question as to whether such an agreement was made, nor can it be said to be conduct calculated to lull counsel into a false sense of security. Although defendant's insurer had offered to begin negotiations, no showing was made that negotiations had actually taken place. The offer was not an implicit concession of liability. See *Devlin v. Wantroba* (1966), 72 Ill. App. 2d 383, 218 N.E.2d 496.

The trial court correctly ruled that no factual question existed as to waiver.

■ Plaintiff also claims a reversible error occurred in the ruling on the motion for summary judgment. Prior to filing the motion for summary judgment, defendant had raised the limitations defense in a motion under the then section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). Plaintiff countered with an affidavit by Mr. Danz. The trial court, with a different judge sitting, ruled the affidavit to have raised a factual question as to waiver which should be submitted to a trier of fact. Plaintiff maintains the court erred in changing its ruling on the issue of whether a factual question of waiver existed when it allowed the motion for summary judgment. However, the court also had Mr. Danz' deposition before it at the time the summary judgment motion was heard. In the affidavit Mr. Danz seemed to have indicated defendant's insurer's agent had specifically told him just prior to the expiration date that the case could be settled and no complaint need be filed. In his deposition, Mr. Danz clarified his statement to be that he merely inferred this from the conversation previously reported. The court's refusal to grant the section 48 motion did not require the court to later deny the motion for summary judgment.

We affirm the summary judgment.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.