STEVEN MAKOWSKI *et al.*, Plaintiffs-Appellants, v. THE CITY OF NAPERVILLE, Defendant-Appellee.

Second District No. 2—92—1181

Opinion filed August 2, 1993.

Peter H. Jagel, of Knuckles & Jagel, of Naperville, for appellants.

Marvin J. Glink and Jeffrey D. Greenspan, both of Ancel, Glink, Diamond & Cope, P.C., of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Steven Makowski, Richard Swanson, Ronald Calaway and Kent Novatny, appeal from an order of the circuit court of Du Page County denying their motion for partial summary judgment and granting defendant's, the City of Naperville's (City's), motion for summary judgment. Plaintiffs contend that: (1) the trial court's refusal to provide findings of fact or law regarding the basis for its summary judgment decision was reversible error; (2) the trial court erred in reaching its summary judgment decision if it considered certain affirmative defenses raised by defendant; and (3) the trial court erred in granting summary judgment in favor of defendant.

The relevant facts, as gleaned from the record, are as follows. Plaintiffs are each owners of residential property located along River Road within the City's municipal boundaries. Plaintiffs' properties are all located in the Countryside subdivision (Countryside).

Countryside was developed in four phases after it was annexed by the City in 1977. Plaintiffs contracted for the construction of their homes in Countryside between December 1985 and February 1986 in phase two of the Countryside development. Three plaintiffs took possession of their homes in June 1986, and the fourth took possession of his home in September 1986.

To the immediate south of Countryside is land within the City's municipal boundaries known as the Fields subdivision (Fields). In 1976, the Naperville city council (City Council) approved a planned unit development (PUD) preliminary plat for the Fields by enacting ordinance 76—53. The Fields preliminary plat shows an unnamed, generally north-south roadway running north from the proposed Book Road extension through the Fields to the then-undeveloped Countryside. As depicted in the preliminary plat, the roadway abruptly curves to the west as it approaches the northern boundary of the Fields. The Fields preliminary plat remained in place until December 1, 1986, when the City Council approved a final plat for the Fields. In the Fields final plat, the roadway shown in the preliminary plat has been realigned.

The development of the Fields included the construction in 1987 of the north-south roadway shown in the Fields plats. The road became part of River Road. River Road in the Fields was designed and constructed as a local street. Plaintiffs contend that the extension of River Road from the Countryside through the Fields to the Book Road extension has resulted in severe traffic problems and safety concerns for them as homeowners along River Road.

In 1988, plaintiffs first sought judicial relief from these purported problems by filing a claim in Federal district court under 42 U.S.C. §1983 (1988). In a memorandum opinion and order, dated December 20, 1989 (*Makowski v. City of Naperville*, No. 89—C—4043), the Federal court dismissed count I (the 42 U.S.C. §1983 count) of plaintiffs' complaint for failure to state a claim, and found no reason to retain the pendant State claims which constituted counts II through VII of plaintiffs' complaint.

On May 10, 1990, plaintiffs filed a six-count complaint in State court. Plaintiffs' amended complaint contains seven counts. Counts I and II seek *mandamus*. Counts III and IV allege common-law negligence. Count V alleges statutory negligence. Count VI alleges public nuisance. Count VII seeks a declaratory judgment.

The parties filed cross-motions for summary judgment (plaintiffs' motion was for partial summary judgment, reserving the question of damages). The trial court subsequently entered a final order denying

plaintiffs' motion for summary judgment and granting defendant's motion for summary judgment.

Plaintiffs appeal from the final order on the summary judgment motions.

The first issue is whether the trial court's failure to provide findings of fact or law as a basis for its summary judgment rulings prevents effective appellate review and is therefore reversible error. The trial court issued a letter ruling concerning, *inter alia*, plaintiffs' motion for partial summary judgment and defendant's motion for summary judgment. The letter ruling indicated that the trial court had "read and considered everything tendered to it" regarding the summary judgment motions. The letter ruling also indicated that the rulings were made in the light of the attorneys' oral arguments at a prior hearing. The trial court provided no further explanation for its rulings and made no explicit findings of fact or law.

Plaintiffs subsequently filed a motion to clarify and for findings. At a hearing on that motion, plaintiffs' counsel explained to the trial court that plaintiffs sought clarification because the letter ruling granted defendant partial summary judgment when defendant had made an unqualified motion for summary judgment. The trial court responded that it had understood that the matter concerned cross-motions for partial summary judgment and then stated it would enter the written order as tendered (granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment).

At the same hearing, plaintiffs stated that they assumed the trial court's ruling was based on the court's conclusion that there were no disputed issues of material fact. Plaintiffs then asked the trial court whether it had made some legal conclusions or findings based upon those undisputed facts, and whether that could be a part of the order to clarify exactly what the basis of the decision was. The trial court replied "I can't say that I had done that," and, despite plaintiffs' request for elaboration, the trial court entered the order with no further explanation for its ruling.

On appeal, plaintiffs contend that the trial court did not understand the relief requested by defendant in its motion for summary judgment. Plaintiffs also contend that the trial court stated that it had not made any legal conclusions or finding of fact. Plaintiffs argue that such silence prevents effective review and cite two Federal cases (*Smith v. Village of Maywood* (7th Cir. 1992), 970 F.2d 397; *Freeman v. Franzen* (7th Cir. 1982), 695 F.2d 485) for the principle that such silence is reversible error.

In general, in a nonjury case, "[n]o special findings of fact, certificate of evidence, propositions of law, motion for a finding, or demurrer to the evidence is necessary to support the judgment or as a basis for review." (134 Ill. 2d R. 366(b)(3)(i).) In appeals from summary judgment rulings, a reviewing court conducts a *de novo* review. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) It is the judgment and not what else may have been said by the lower court that is on appeal to the reviewing court. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) The reviewing court's function in reviewing a summary judgment is to determine whether the trial court correctly found that no genuine issue of material fact existed and whether the trial court correctly entered judgment for the moving party as a matter of law. (*Fitzwilliam v. 1220 Iroquois Venture* (1992), 233 Ill. App. 3d 221, 237.) In the light of the record made at the time the trial court ruled (*Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.* (1992), 226 Ill. App. 3d 507, 509), a reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on the proper ground. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502.

 Based on these principles, we conclude that it is not reversible error for a trial court to fail to provide findings of fact or law when ruling on a motion for summary judgment. While such a failure can leave the nonprevailing party in a quandary as to exactly why the trial court ruled as it did, it is the ruling which is being appealed, not the reasons for the ruling.

Because the reviewing court conducts a *de novo* review of the entire record in reviewing a summary judgment, the trial court's reasons for its ruling are not absolutely necessary for effective appellate review. A reviewing court must determine whether the record reveals disputed issues of material fact or errors in entering judgment as a matter of law. In making this determination, a reviewing court may rely on any grounds called for by the record and is not bound by the trial court's reasoning.

Plaintiffs' reliance on the Federal cases cited is unavailing. Those cases involve questions of the reasonableness of the amount of trial court awards for attorney fees and whether the trial court abused its discretion in making the awards. (*Village of Maywood*, 970 F.2d at 399; *Freeman*, 695 F.2d at 494.) Under those circumstances, the failure of the trial court to provide the reasoning behind its decision pre-

vented effective appellate review. *Village of Maywood*, 970 F.2d at 399.

Here, we are reviewing the trial court decision granting defendant's motion for summary judgment. As seen above, our review is *de novo* and based on the entire record, and our determination is not dependant upon the trial court's reasoning. Consequently, the trial court's failure to provide the reasoning behind its decision does not prevent effective appellate court review. Accordingly, we hold that the failure of the trial court to provide findings of fact or law as the basis for its summary judgment rulings was not reversible error.

The next issue on appeal is whether the trial court erred in considering certain affirmative defenses in reaching its decision on the summary judgment motions. Prior to its motion for summary judgment, defendant motioned to dismiss plaintiffs' amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 1—101 *et seq.*). Defendant's motion was based on three affirmative defenses: (1) that defendant's acts were discretionary and therefore not subject to a *mandamus* action; (2) that sections 2—109 and 2—205 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*) expressly immunized defendant from liability for failure to enforce a law; and (3) that plaintiffs' claims were barred by *laches*.

We note that on appeal there has been some confusion as to the affirmative defenses in question. In their appellate brief, plaintiffs state that the affirmative defenses raised by defendant in its motion to dismiss were: "the statute of limitations, tort immunity and laches." However, a careful review of the record shows that the affirmative defenses raised by defendant in its motion to dismiss were those stated above: the applicability of a *mandamus* action, tort immunity and *laches*. We will therefore consider the affirmative defenses actually raised by defendant before the trial court as the affirmative defenses in question here.

The trial court denied defendant's motion to dismiss. The trial court did not indicate if its ruling was on the merits.

Plaintiffs note on appeal that because the trial court did not give any reasons for its summary judgment rulings it is impossible to determine whether the trial court based its summary judgment decision on any of the affirmative defenses in question. Plaintiffs contend that, in the event the trial court did base its decision on any or all of the affirmative defenses in question, the trial court erred.

.

Plaintiffs argue that section 2—619(d) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(d)) prohibits the subsequent raising of affirmative defenses which a court has previously disposed of on the merits. Plaintiffs assert that in denying defendant's motion to dismiss the trial court must have ruled on the merits of the affirmative defenses and defendant was therefore precluded from raising these affirmative defenses again in its motion for summary judgment.

Alternatively, relying on *Smith v. Powell* (1982), 109 Ill. App. 3d 814, plaintiffs argue that even if the trial court did not reach the merits in disposing of the issues raised by the affirmative defenses when it denied defendant's motion to dismiss, defendant must submit some additional evidence in order for the trial court properly to reconsider affirmative defenses in a motion for summary judgment. Plaintiffs maintain that defendant did not submit any evidence to support the affirmative defenses in question at the summary judgment stage and therefore the trial court could not base its summary judgment decision on those affirmative defenses.

Defendant responds that plaintiffs' reliance on *Smith v. Powell* is misplaced. Defendant contends that where the factual requirements for a motion for summary judgment are established a party may raise an affirmative defense in a motion for summary judgment even if the same affirmative defense was previously denied on a motion to dismiss. Defendant asserts that it based its motion for summary judgment on facts contained in an affidavit, public documents on file with the court, and the deposition testimony of plaintiffs. Defendant argues that these facts were not part of its motion to dismiss and that the facts support the affirmative defenses it asserted in its motion for summary judgment. Defendant concludes that it has therefore properly raised the affirmative defenses in question in its motion for summary judgment.

In reference to affirmative defenses, section 2—619(d) provides:

"The raising of any of the foregoing matters by motion under this Section does not preclude the raising of them subsequently by answer unless the court has disposed of the motion on its merits; and a failure to raise any of them by motion does not preclude raising them by answer." (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(d).)

Under section 2—619(d), where a party has previously raised affirmative defenses by a section 2—619 motion and the court has disposed of the motion on its merits, the court has adjudicated all the grounds set forth in the motion and the party cannot raise the affirmative de-

fenses again on the same grounds in a later motion. See *Mogul v. Tucker* (1987), 152 Ill. App. 3d 610, 612.

■ Here, the record does not indicate whether the trial court disposed of defendant's section 2—619 motion to dismiss on the merits. Because a court may deny such a motion without reaching the merits, such as when it cannot determine with reasonable certainty that the alleged defense exists or because it concludes the motion may involve disputed factual issues (*Sjogren v. Maybrooks, Inc.* (1991), 214 Ill. App. 3d 888, 891), we conclude that the denial of such a motion, without more, does not show that the court disposed of the motion on its merits. The plain language of section 2—619(d) provides that a party who has raised affirmative defenses in a prior section 2—619 motion may raise the same matters again in a subsequent motion "unless the court has disposed of the motion on its merits." (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(d).) Accordingly, we conclude that unless the nonmoving party shows that a court disposed of the prior motion on the merits, the moving party may subsequently raise the matters.

The record here does not indicate whether the trial court disposed of defendant's motion to dismiss on the merits. Under these circumstances, we conclude that section 2—619(d) did not preclude defendant from raising the same affirmative defenses in its motion for summary judgment that it raised in its motion to dismiss.

■ With regard to plaintiffs' alternative arguments, we find plaintiffs' authority unpersuasive for the purported principle that a party must submit additional evidence in order to reassert an affirmative defense. In *Smith*, the plaintiff alleged that the trial court erred when it allowed defendant there to assert a statute of limitations defense in a motion for summary judgment after a prior ruling denying defendant's motion to dismiss based on a statute of limitations defense. (*Smith*, 109 Ill. App. 3d at 819.) However, the reviewing court found no trial court error because the trial court had additional evidence before it in its ruling on the motion for summary judgment. (109 Ill. App. 3d at 819.) In *Smith*, it was clear that the prior ruling had been on the merits. (109 Ill. App. 3d at 818.) Thus, *Smith* at most stands for the proposition that when a trial court allows a party to reassert a defense after previously ruling on the merits, new evidence is required.

Here, as seen above, the record does not show that the trial court reached the merits when it denied defendant's motion to dismiss. Consequently, *Smith* is inapplicable. Furthermore, additional evidence, which was not available when the trial court denied defendant's mo-

tion to dismiss, was available when the trial court granted defendant's motion for summary judgment.

For all these reasons, we hold that the trial court did not err in its motion for summary judgment ruling if it relied on any or all of the affirmative defenses raised by defendant in its motion to dismiss.

The last issue on appeal is whether the trial court erred when it granted defendant's motion for summary judgment. We will first set out general principles which govern the granting of a motion for summary judgment.

A court should grant summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) While the goal of expeditious disposition of a lawsuit by the use of summary judgment is encouraged, summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271.) Accordingly, a court ruling on a motion for summary judgment must strictly construe the evidence against the movant and liberally in favor of the nonmoving party. *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 234.

It is well established that in deciding a motion for summary judgment the court may draw inferences from undisputed facts. (*Loyola Academy*, 146 Ill. 2d at 272.) However, where reasonable persons could draw divergent inferences from undisputed facts, the trier of fact should decide the issues and the summary judgment motion should be denied. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358.

If the record shows that plaintiff has failed to establish an element of a cause of action, summary judgment for defendant is proper. (*Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 298.) To prevent the entry of summary judgment, plaintiff need not prove his case at a preliminary stage, but plaintiff must present facts sufficient to support the elements of his claim. *Kuwik v. Starmark Star Marketing & Administration, Inc.* (1992), 232 Ill. App. 3d 8, 12.

Each of the seven counts in plaintiffs' amended complaint alleges that defendant violated one or more ordinances. Each count is predicated on these alleged violations. Hence, under the above principles, if the record shows there are no genuine issues of material fact and the undisputed facts show as a matter of law that defendant did not violate the ordinances as alleged, then the trial court did not err in granting defendant's motion for summary judgment. Accordingly, the

first question before us is whether there are any genuine issues of material fact with respect to the alleged violations. If not, then the next question is whether the record shows as a matter of law that defendant violated or did not violate the ordinances as alleged.

Plaintiffs' amended complaint alleges that defendant violated ordinances in two ways: (1) procedural violations, where defendant allegedly failed to follow the procedures mandated by ordinances for approval of the Fields final plat; and (2) nonprocedural violations, where defendant allegedly knew or should have known that its approval of the Fields final plat would violate ordinances related to street design and use. We will determine for each of these sets of allegations whether there are genuine issues of material fact precluding summary judgment and, if not, whether defendant is entitled to summary judgment as a matter of law.

Plaintiffs first allege that defendant failed to follow mandatory procedures in approving the Fields final plat. This allegation is based on plaintiffs' contention that there were "major changes" to the Fields preliminary plat as evidenced by the proposed Fields final plat.

The City's Municipal Code provides that "[a] revised preliminary plat of planned unit development and supporting data shall be submitted upon a major change." (Naperville, Ill., Municipal Code §6—4—6.2 (19____).) The Municipal Code also provides that the procedure to be followed when there has been a major change shall be the same procedure used in seeking approval of a preliminary plat. (Naperville, Ill., Municipal Code §6—4—6.2 (19____).) That procedure requires a number of specific steps, including a public hearing before the plan commission, notice of the public hearing in a newspaper of general circulation, and written findings of fact. (Naperville, Ill., Municipal Code §6—4—4.2 (19____).) It is undisputed that the procedural steps required for the approval of a major change were not completely followed in the Fields final plat approval process.

The Municipal Code defines major changes as "modifications which alter the concept or intent of the planned unit development such as, changes in density, changes in location and type of uses of land *** or alteration in road alignment." (Naperville, Ill., Municipal Code §6—4—6.1 (19____).) The Municipal Code defines minor changes as "changes not defined as major changes and which do not alter the concept or intent of the planned unit development." (Naperville, Ill., Municipal Code §6—4—6.2 (19____).) Unlike major changes, "[m]inor changes shall be approved by the City Council without the review and recommendation of the Plan Commission." (Naperville, Ill., Municipal Code §6—4—6.2 (19____).) The immediate question before us is

whether there were genuine issues of material fact related to whether there were major changes.

The parties both contend that there were no genuine issues of material fact related to the question of whether there were major changes in the Fields preliminary plat. We agree. The undisputed facts show that there were changes between the Fields preliminary plat and the Fields final plat. The changes were: (1) changes in the way the north-south street which became River Road is depicted; (2) the removal of a school site; and (3) changes in the width of River Road. The record does not establish the magnitude of any of these three changes, but it seems clear that the road alignment and road width changes were relatively minor. The exhibits which plaintiffs attached to their amended complaint purporting to show the change in road alignment shed little light on the exact nature or magnitude of the change.

Plaintiffs contend that each of these changes was a major change. In their arguments, plaintiffs focus primarily on the road alignment change. Plaintiffs essentially contend that the road alignment change was a major change because it is defined as such in the Municipal Code. Because the Fields final plat approval did not completely follow the procedural steps required for the approval of a final plat after a major change, plaintiffs maintain that defendant violated the ordinance requiring such procedures and that the trial court erred in granting defendant's motion for summary judgment.

Defendant responds that none of the changes was a major change and therefore it did not violate the procedural ordinance when it approved the Fields final plat. Defendant primarily relies on the affidavit of Walter S. Newman to conclude that none of the changes was a major change.

In his affidavit, Newman, the City's director of the department of community development and zoning administrator since 1976, stated that his duties include the interpretation of zoning regulations such as those governing PUD plat approval. Newman's affidavit further stated that the plan commission, after several workshops and meetings which considered the Fields final plat proposal, "determined that the plat was changed for engineering purposes only and was considered to be in conformance to the preliminary plat." Newman also stated in his affidavit that the Fields final PUD plat "did not alter the concept or the intent of the original planned unit development and is a minor change under section 6—4—6 of the Naperville Municipal Code." Newman also stated that he was authorized by title 7 of the Municipal Code to recommend approval of a final plat to the City's

mayor and City Council if he determined that a final plat was in substantial conformance with a preliminary plat. Newman's affidavit also stated that "In my opinion the final plat of the Fields Subdivision was in substantial conformance to the preliminary plat as approved."

Determining whether the changes in question were major changes requires us to construe the City's Municipal Code. The fundamental rule of statutory construction is to give effect to the intent of the drafters. (*State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 247.) To do that, a court first looks to the language of the statute, and, if the language is clear and unambiguous, the court should give the language effect and not employ extrinsic aids to construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) The court must examine the language of the statute as a whole and consider each part or section in connection with every other part or section. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484.) The construction of a statute or ordinance is a question of law. *Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 993.

Here, the central provision in question is section 6—4—6.1 of the Municipal Code, which provides:

> "Major changes are modifications which alter the concept or intent of the planned unit development such as, changes in density, changes in location and type of uses of land, increases in the height of buildings or structures, reduction in the acreage of open space, modification of more than ten percent (10%) in the number of dwelling units in any designated land use area, or alteration in road alignment." Naperville, Ill., Municipal Code §6—4—6.1 (19____).

When section 6—4—6.1 is read without reference to other sections of the Municipal Code, it suggests a construction that agrees with the construction urged by plaintiffs. That construction is that *any* change in road alignment is a major change. However, title 6 of the Municipal Code is subject to title 7 of the Municipal Code in some respects because "[a]ll public improvements shall conform to the regulations and design standards of title 7, Subdivisions, of this Municipal Code." Naperville, Ill., Municipal Code §6—4—3.2 (19____).

Accordingly, section 6—4—6.1 must be read in connection with section 7—2—5.7. Section 7—2—5.7 authorizes the director of the Department of Community Development (DCD) to "recommend approval of a final plat to the mayor and City Council if the director determines that the final plat is in substantial conformance to the preliminary plat as approved." (Naperville, Ill., Municipal Code §7—2—5.7 (19____).) This section clearly allows for some discretion by the direc-

tor of DCD in recommending approval for a final plat even though it may contain some changes from a preliminary plat. We conclude that this discretion extends to the specific changes listed in section 6—4—6.1. A contrary conclusion (that there is no discretion with respect to the changes specifically listed) would require the notice and hearing procedure for any change in a specifically listed item. Such a construction would clearly conflict with section 7—2—5.7, which is controlling. Such a construction would also be an absurd and inconvenient result, and courts should not construe statutes to lead to such results. *Loyola Academy*, 146 Ill. 2d at 273.

■ Applying this construction of the City's Municipal Code to this case leads us to the conclusion that the changes in question were not major changes and therefore did not require the notice and hearing procedures mandated for major changes. While Newman's affidavit was addressed primarily to the road alignment change, it also encompassed the school and road width changes. Newman's affidavit indicated that the Fields final plat, as a whole, did not alter the concept or intent of the preliminary plat and that the Fields final plat changes were minor changes under the Municipal Code.

Plaintiffs argue that Newman's affidavit was inconsistent with a different DCD recommendation written by Newman to the City Council indicating that a school site change was a major change. We find this argument unpersuasive. Newman's other recommendation was based on a proposed school change in a different PUD. Under the circumstances of that PUD, Newman concluded that the proposed school change would be a major change because it would alter the concept or intent of the PUD. We disagree with plaintiffs' position that Newman's recommendation, based on the facts of another PUD, necessarily means that any school change is a major change. With respect to the road width change, plaintiffs simply did not present any evidence to support their conclusion that the road width change was a major change.

For all these reasons, we conclude, as a matter of law based on the undisputed facts, that there were no major changes in the Fields final plat. Accordingly, defendant did not violate procedural ordinances when it approved the Fields final plat without following the procedures required for a major change.

We turn next to plaintiffs' allegations of nonprocedural ordinance violations. In their amended complaint, plaintiffs allege that defendant violated mandatory ordinances governing street design and use when defendant approved the Fields final plat.

Plaintiffs claim that defendant violated three ordinances. The first ordinance, the master thoroughfare plan (Naperville, Ill., Municipal Code, title 1, ch. 11 (1985)), was incorporated as part of the official comprehensive plan of the City and contained a map indicating that River Road in the Fields should be a local street. (This indication was by default, because the map did not depict River Road as a higher classification street; River Road was deemed classified by default as a local street.)

The second ordinance in question provides in relevant part:

"The street layout shall conform to the adopted Thoroughfare Plan of the City. The street layout shall recognize the functional classification of the various types of streets and shall be developed and located in proper relation to existing and proposed streets, *** to public convenience and safety, to the proposed use of the land to be served by such streets and to the most advantageous development of adjoining areas." Naperville, Ill., Municipal Code §7—3—3.1.1 (19____).

The third ordinance in question provides that local streets "shall be arranged *** to discourage use by through traffic." Naperville, Ill., Municipal Code §7—4—2.1.5 (19____).

■ The facts relevant to the issue of alleged nonprocedural ordinance violations are not in dispute. Defendant admitted that the master thoroughfare plan, by default, indicates that River Road in the Fields should be a local street. Defendant also admitted that River Road was designed and actually constructed to local street standards as defined by City ordinances. Defendant further admitted that it has conducted traffic studies which indicate that River Road in the Fields, in 1991, experienced traffic flow in excess of the standards for a local street. Because these facts are not in dispute, we may determine as a matter of law whether defendant violated the ordinances in question and whether, therefore, defendant was or was not entitled to summary judgment on this issue.

Plaintiffs contend that the undisputed facts show that defendant violated the ordinances. On appeal, plaintiffs assert that defendant "violated these ordinances with regard to the extension of River Road by approving a street layout that failed to recognize the functional classification of the existing local street design within the Countryside Subdivision, failed to locate the extension of River Road in proper relation to existing and proposed streets of higher functional classification, failed to consider the safety and convenience of plaintiffs within the Countryside subdivision, encouraged the continuing use of a local street design by through traffic from other parts of Naperville and

from areas outside the corporate limits of the city, and not conforming to the Master Thoroughfare Plan of the city." Plaintiffs also assert that they presented evidence showing that defendant recognized traffic problems on River Road and that defendant therefore knew or should have known that its conduct in approving the Fields final plat would result in ordinance violations.

Defendant responds that the undisputed facts show that defendant did not violate the ordinances in question. Defendant asserts that plaintiffs failed to establish any facts showing noncompliance by defendant with any of the ordinances or any other violations. We agree.

The first ordinance plaintiffs alleged defendant violated was the master thoroughfare plan (MTP). The MTP indicates that River Road in the Fields should be a local street. The undisputed facts show that River Road in the Fields was laid out and constructed as a local street and is classified as a local street. Although plaintiffs imply that there is a kind of ongoing violation of the MTP because the actual vehicle usage on River Road in the Fields exceeds the standards for a local street, plaintiffs have failed to present any evidence supporting such a conclusion. Plaintiffs have not pointed to anything in the MTP itself or anywhere else that even suggests that a change in the usage of a street laid out in conformity with the MTP violates the MTP. Accordingly, we find that the undisputed facts show that defendant did not violate the MTP.

The first sentence of the second ordinance defendant allegedly violated provides: "The street layout shall conform to the adopted Thoroughfare Plan of the City." (Naperville, Ill., Municipal Code §7—3—3.1.1 (19___).) The record shows that the adopted thoroughfare plan of the City is the MTP. The undisputed facts show that under the MTP River Road in the Fields should be a local street and that River Road in the Fields was actually constructed as a local street. Again, we fail to see how defendant violated the ordinance in question when the ordinance requires that street layout conform to the MTP and River Road in the Fields was in fact laid out and constructed in conformity with the MTP.

Plaintiffs rely on the part of the ordinance following the first sentence for their argument that defendant failed to recognize the functional classification of adjoining streets and failed to locate River Road in proper relation to existing streets and for public convenience and safety. We find that plaintiffs failed to present facts supporting these claims. In addition, as seen above, the ordinance first required plaintiff to follow the MTP which defendant did. Plaintiffs have not

argued that the MTP violated other ordinances or was itself invalid. Accordingly, we find that the undisputed facts show that defendant did not violate section 7—3—3.1.1 of the Municipal Code.

The last ordinance plaintiffs allege defendant violated is section 7—4—2.1.5 of the Municipal Code. This ordinance requires that local streets shall be arranged "to discourage use by through traffic." (Naperville, Ill., Municipal Code §7—4—2.1.5 (19___).) Plaintiffs' amended complaint alleged that defendant knew or should have known that its approval of the Fields final plat would result in the continuing violation of this ordinance.

We find that plaintiffs have not presented facts sufficient to support this claim. On appeal, plaintiffs argue that they presented evidence showing that defendant recognized that River Road was functioning as a collector street and that defendant recognized a River Road problem and a "River Road syndrome" where an arterial street dumps into a residential area. However, plaintiffs' evidence does not establish that defendant knew or should have known that its approval of the Fields final plat would result in these problems.

The evidence purportedly showing that defendant knew River Road was functioning as a collector street is contained in a 1988 interoffice memo which was a follow-up of a City Council deliberation concerning River Road in Countryside. This evidence fails to support the allegations in plaintiffs' amended complaint because: it is after the fact of the Fields final plat approval which occurred in December 1986; it is in reference to River Road in Countryside rather than the subject of plaintiffs' complaint, River Road in the Fields; and the interoffice memo taken as a whole shows that when defendant realized there were problems with traffic on River Road in Countryside defendant responded with reasonable attempts to solve the problem including various alternative solutions with particular attention to child safety.

The evidence purportedly showing that defendant was aware of a River Road problem or River Road syndrome is based on a 1989 plan commission public hearing meeting concerning revisions to the MTP. This evidence suffers from the same deficiencies as the collector street evidence seen above. This evidence also arose after the approval of the Fields final plat and therefore does not support a conclusion that defendant knew or should have known of it when the final plat was approved. This evidence also does not deal directly with River Road in the Fields. Rather, the evidence specifically concerns River Road in Countryside, so that even if it was timely its relevance is doubtful. In addition, the evidence again shows that when defend-

ant realized there were problems of this type defendant took reasonable steps to try to solve the problems.

For these reasons, we conclude that the undisputed facts show that defendant did not violate section 7—4—2.1.5 of the Municipal Code.

Based on the foregoing, we conclude that the undisputed facts of this case, construed liberally in favor of plaintiffs, show that defendant did not violate any of the ordinances plaintiffs' amended complaint alleges defendant violated. Because these alleged violations are essential elements in each count of plaintiffs' amended complaint, we conclude that the trial court did not err when it granted defendant's motion for summary judgment. Because of our finding with respect to the alleged ordinance violations, it is not necessary for us to address the affirmative defenses the trial court might have considered.

The trial court's order granting defendant's motion for summary judgment is affirmed.

Affirmed.

WOODWARD and QUETSCH, JJ., concur.