OLD KENT BANK-ST. CHARLES N.A., Plaintiff-Appellee, v. SURWOOD CORPORATION *et al.*, Defendants-Appellants (American Resources Development Corporation *et al.*, Defendants).

Second District   No. 2—92—1080

Opinion filed January 24, 1994.

Green, Jones & Brisske, of Wheaton (Heinz J. Brisske, of counsel), and Danielle M. Jaeschke, of Law Offices of Robert B. Patterson, Ltd., of Chicago, for appellants.

Douglas A. Slansky and David H. Hight, both of Keck, Mahin & Cate, of Oakbrook Terrace (Carl F.J. Henninger, of counsel), for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Old Kent Bank-St. Charles N.A., filed a six-count complaint to foreclose two mortgages in the circuit court of Kane County against defendants, Surwood Corporation; Wildwood Group, Inc.; Design and Management Associates, Inc.; American Resources Development Corporation; Wildwood Cove Homeowner's Association; Villas of Wildwood Cove Condominium Association, Inc.; Gordon K. Drawer; Myron D. Andersen; Steven M. Walter, unknown owners,

nonrecord claimants; and unknown tenants and occupants. Defendants Surwood Corporation; Wildwood Group, Inc.; Design and Management Associates, Inc.; Gordon K. Drawer; Myron D. Andersen; and Steven M. Walter timely appeal from an order denying their motion to reconsider the trial court's grant of summary judgment in favor of plaintiff on counts I, II, and V of its complaint. Counts I and II were directed solely against Surwood, and count V was directed solely against Gordon K. Drawer. The trial court's order contained the requisite Supreme Court Rule 304(a) finding. See 134 Ill. 2d R. 304(a).

The present dispute arose from defendants' less than successful attempt to develop a residential real estate project known as Wildwood Cove in St. Charles, Illinois. Following Surwood's default on an $875,000 promissory note, plaintiff filed an action to foreclose a first and second mortgage on certain tracts of real property securing the note. Defendants' primary contention on appeal is that the trial court erred in granting summary judgment in favor of plaintiff because genuine issues of material fact remained with respect to plaintiff's foreclosure action against Surwood and the seven affirmative defenses interposed by defendants.

To appreciate fully the issues raised, it is necessary to understand first the basic relational structure of the project. The project essentially involved two separate legal entities: Surwood Corporation and Wildwood Group, Inc. Surwood was wholly owned by Gordon K. Drawer, and its role was to procure undeveloped tracts of land and improve the property with basic infrastructure. In order to finance the procurement and improvement phase of the project, Surwood executed an $875,000 promissory note in favor of plaintiff. The note was dated August 23, 1989, Surwood was listed as the sole obligor, and the note was signed by Gordon K. Drawer as president of Surwood. Securing the note was a first mortgage on 10.43 acres of land known as Wildwood Cove unit 1 and unit 2, and a second mortgage on 1.98 acres of land known as Surrey Woods Drive. Additionally, Gordon Drawer executed a personal guaranty on the note in favor of plaintiff.

Wildwood Group, Inc., was a closely held corporation with Gordon K. Drawer, Myron D. Andersen, and Steven Walter as the sole shareholders. Under a separate agreement executed between Wildwood and Surwood, Wildwood agreed to purchase, following the infrastructure improvements, the improved tracts and complete the construction phase of the project. In order to meet its land purchase obligations, Wildwood executed a $2 million promissory note in favor of plaintiff. The note was dated February 9, 1990, the sole obligor was

Wildwood, and it was signed by Steve Walters and Gordon Drawer, as officers of the corporation. Additionally, Myron Andersen and Gordon Drawer executed personal guarantees on the note in favor of plaintiff.

On June 11, 1991, plaintiff filed a six-count complaint to foreclose the mortgages securing both the $875,000 note and the $2 million note. Counts I and II were directed against Surwood, as mortgagor. Counts III and IV were directed against Wildwood, as mortgagor. Count V sought payment under Drawer's personal guaranty in the amount of $860,035.77 plus interest, and count VI likewise sought to enforce the personal guarantees relative to the Wildwood obligation.

In their answer, defendants denied that Surwood defaulted on the loan obligations and raised seven affirmative defenses. Individually and collectively, the affirmative defenses asserted that plaintiff had breached its contractual duties to Surwood and Wildwood by declaring the loan in default and refusing to advance monies. Additionally, defendants asserted that plaintiff breached its contractual duty of good faith, that plaintiff was estopped from foreclosing the mortgage because it failed to meet its contractual obligations, that plaintiff waived its right to declare a default, and that plaintiff acted with unclean hands.

Plaintiff moved for summary judgment on counts I, II, and V. In its motion, plaintiff asserted that it was undisputed that plaintiff extended to Surwood amounts in excess of the full credit line, that neither Surwood nor Drawer, as personal guarantor, repaid the outstanding principal balance, which was due on September 1, 1991, and that the maturity date had passed, thus placing the loan in default. Plaintiff further maintained that defendants' contentions that plaintiff breached its contractual obligations by failing to advance funds were unsupported by the facts. Attached to its motion were numerous documents, including copies of the Wildwood and Surwood notes and mortgages, Drawer's personal guaranty, two irrevocable letters of credit issued in favor of the City of St. Charles for the account of Surwood, an affidavit of Steven W. George, an officer of plaintiff, and a copy of a schedule of the Surwood loan account balances prepared from plaintiff's books and accounts.

In their response to plaintiff's motion, defendants maintained that although plaintiff sought only to obtain summary judgment on the Surwood loan, plaintiff's line of credit to Wildwood, and its conduct with respect thereto, was "inexorably intertwined" with the Surwood loan. The primary thrust of defendants' response was since plaintiff wrongfully revoked the Wildwood line of credit, Surwood was prevented from meeting its loan obligations on the $875,000

note. Surwood argued that plaintiff was fully aware of the interdependent nature of the two loan obligations and when plaintiff wrongfully revoked the Wildwood line of credit, Wildwood could no longer fulfill its purchase obligations to Surwood, thus causing Surwood to be unable to meet its loan obligation to plaintiff. Surwood maintained (1) that plaintiff had no right to revoke the Wildwood line of credit; (2) that plaintiff was estopped from alleging a default on the Wildwood line of credit; and (3) that plaintiff through its control of Wildwood breached its covenant of good faith and fair dealing running to Wildwood.

Attached to defendants' response was the affidavit of Gordon Drawer. Drawer averred that in or about June 1989 Wildwood and Surwood entered into a land purchase contract, wherein Wildwood agreed to purchase various land parcels from Surwood. During the summer of 1989, Drawer met with representatives of plaintiff, including Edward Ryan, president of Old Kent Bank, and negotiated an $875,000 loan. This loan enabled Surwood to purchase property from a third party, conduct site work, and perform certain infrastructure improvements. The Surwood loan closed on August 23, 1989.

During the summer and fall of 1989, Drawer met with Myron Andersen, Steve Walters, and representatives of plaintiff, and, as a result of their meetings, plaintiff extended a $2 million revolving line of credit to Wildwood. This loan enabled Wildwood to purchase the infrastructure-improved parcels from Surwood and construct the buildings. Additionally, the loan monies provided a source of funding for marketing and other costs.

Drawer further averred that "the fortunes of Wildwood and Surwood were completely interwoven" because Surwood was obligated to sell and Wildwood was obligated to purchase the various land parcels. According to Drawer's affidavit, Surwood's sole source of income was derived from the Wildwood land purchases. Drawer further averred that Old Kent, as lender, was "fully aware that Wildwood's ability to purchase the [p]roperty depended directly on its ability to secure financing." Additionally, plaintiff was aware of "the interwoven fortunes of Wildwood and Surwood."

According to Drawer, Ryan acknowledged that Wildwood would fund its carrying costs from the Wildwood line of credit in the event sales did not occur as planned. Ryan further understood that Wildwood would fund its interest payments through draw requests against its line of credit.

Early in 1990, the Wildwood line of credit was funded and construction proceeded according to schedule. A grand opening was held for prospective buyers and community leaders on June 28, 1990.

As early as November 1990, plaintiff expressed concerns that the Wildwood loan was "out of balance." Accordingly, Ryan requested additional collateral to secure the loan.

In August 1990, Ryan suggested that Wildwood engage Bertram Marketing Associates to market Wildwood Cove. Following the completion of a marketing survey and the submission of their proposal, Wildwood, in November 1990, retained Bertram to implement its marketing plan. According to Drawer, Bertram, with the consent of plaintiff, directed "a significant amount of Wildwood's financial resources early in 1991 in order to enhance the overall desirability of Wildwood Cove."

Over a period of six to nine months, Bertram directed Wildwood to expend its resources on redecorating the model homes, altering the sales office, and replacing its existing sales force. Drawer further averred that based upon plaintiff's representations to Bertram that there was no problem with the Wildwood financing, Bertram focused its efforts on developing long-term sales. Drawer further stated that plaintiff's "interference" with marketing Wildwood was not merely limited "to arranging for the retainer of Bertram," but Ryan took it upon himself to test personally the sales people and report to Wildwood about their competence.

Drawer stated that Wildwood relied on Bertram to market Wildwood Cove in a manner consistent with Wildwood's goal of selling the condominiums and townhomes as a fully developed community. Additionally, Wildwood would not have retained Bertram in the fall of 1990 had it known that expenditures made in furtherance of the marketing plan could result in plaintiff's decision to terminate the Wildwood line of credit.

Drawer averred further that plaintiff began to "deliberately delay" Wildwood's requests for additional funds. Following several meetings in November 1990 and January 1991, Ryan demanded that Wildwood provide additional collateral to secure the Wildwood loan. In support of the demand, Ryan presented Drawer with a shortfall analysis. According to the shortfall analysis, plaintiff's projected valuation of the completed Wildwood Cove buildings was $245,000 less than the loan balance and costs to complete. Drawer stated that Ryan never explained "why he felt it relevant to compare the outstanding loan balance, which included expenditures made for the benefit of the entire subdivision, with the valuations of only the first two finished residential units." Ryan demanded additional collateral and threatened not to fund additional draw requests.

In a letter to Drawer, which was attached to Drawer's affidavit, Ryan stated that under the terms of the Wildwood note the extension

of the loan "shall be in the bank's sole discretion," and unless Wildwood commits additional collateral, plaintiff will refuse any further draw requests, declare a default, and accelerate the outstanding loan balance. Drawer further averred that if Wildwood had been aware that it would be subject to "such a shortfall analysis" it would not have allowed the implementation of the Bertram "long-term" marketing plan. Ultimately by February 1991 plaintiff failed to honor Wildwood's draw requests.

As a result of plaintiff's failure to fund Wildwood's draw requests in a timely manner, and its ultimate refusal to fund after February 1991, "Wildwood's ability to market Wildwood Cove was destroyed." Wildwood was unable to meet its obligations to Bertram, the sales staff, subcontractors, or the utility companies. Additionally, "it became impossible" for Wildwood to pay its interest obligations on the Wildwood loan because the draw requests were no longer being honored. Finally, Drawer averred that at no time did Wildwood's indebtedness to plaintiff exceed $2 million.

In its reply to defendants' response, plaintiff challenged Drawer's affidavit on the ground that it failed to comply with Supreme Court Rule 191 (see 134 Ill. 2d R. 191). Plaintiff maintained that the affidavit was replete with hearsay statements, conversations unsupported by evidentiary foundations for admissibility, conclusions, and other inadmissible material.

On April 23, 1992, plaintiff's motion for partial summary judgment on counts I, II, and V was granted. Defendants' subsequent motion for reconsideration was denied, and this appeal followed.

As a reviewing court determining the propriety of an order granting summary judgment, we conduct a *de novo* review. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) The purpose of summary judgment is to determine the existence of any genuine issues of material fact (see *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), and absent any such issues, it is properly granted where the court can resolve the case before it as a matter of law (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 410-11).

■ At the outset, it is necessary to determine if an issue of fact existed relative to whether the Surwood and Wildwood loan obligations were, as defendants claim, interdependent. Defendants contend that Surwood's ability to meet its loan obligations was wholly dependent upon Wildwood purchasing land from Surwood and that plaintiff's declaring the Wildwood loan in default caused defendants to default on the Surwood loan. In support of their argument, defendants rely heavily on Drawer's affidavit. Plaintiff responds that the Surwood and Wildwood loans were separate and independent

transactions and because their motion sought summary judgment with respect only to the counts addressing the Surwood loan and Drawer's personal guaranty, the trial court did not err in granting the motion in their favor.

Implicit in their contentions is the issue of whether, at the time of contracting, the parties intended Surwood's loan repayment obligation to be contingent on the continued funding of the Wildwood line of credit or whether, as plaintiff urges, the transactions were distinct transactions. It is axiomatic that when a contract is judicially interpreted, the primary goal is to discover and give effect to the intent of the parties at the time they entered into the contract. (*In re Marriage of Belk* (1992), 239 Ill. App. 3d 806, 809.) In construing the terms of the contract, a court looks first only to the language employed by the parties in describing their intent; if such language is clear and unambiguous, it will be given its natural and ordinary meaning. (*Forest Preserve District v. Brookwood Land Venture* (1992), 229 Ill. App. 3d 978, 981-83.) In the absence of ambiguity, the intention of the parties at the time of contracting must be ascertained by the language utilized itself and not by construction placed on it by the parties. *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293; *Fitzwilliam v. 1220 Iroquois Venture* (1992), 233 Ill. App. 3d 221, 230.

In cases involving contracts, there is a disputed fact precluding summary judgment when a material writing contains an ambiguity which requires the admission of extrinsic evidence. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.) In other words, where the intent of the parties may be ascertained from the plain language of the contract, no disputed issue of fact exists. *Village of Glenview v. Northfield Woods Water & Utility Co.* (1991), 216 Ill. App. 3d 40, 49.

Following a review of the documents, we conclude that there exists no disputed issue of fact that the parties intended the Surwood and Wildwood loans to be separate and independent transactions. It is undisputed that Surwood and Wildwood were separate and distinct legal entities. The clear and unambiguous language of the Surwood loan documents depicts Surwood as the sole obligor, and it was signed solely by Gordon Drawer, as president of Surwood. Neither the Surwood note nor the Surwood mortgage purports in any manner to make Surwood's repayment obligation contingent upon Wildwood's continued purchases of land parcels from Surwood.

Additionally, comparing the Surwood loan documents to the Wildwood loan documents reveals no intention to make one transaction mutually dependent on the other. The loan amounts differ, the commitment dates differ, the collateral pledged as security differs,

the personal guarantees for each transaction differ, and neither the notes nor the mortgages refer to the land purchase contract between Wildwood and Surwood. Because we find the documents related to both transactions to be clear and unambiguous, it is unnecessary to consider extrinsic evidence regarding the parties' intentions. (*Cf. 20 East Cedar Condominium Association v. Luster* (1976), 39 Ill. App. 3d 532, 535-36.) Accordingly, any issue raised concerning plaintiff's awareness of or acquiescence in Surwood's loan obligation, as explained in Drawer's affidavit, being contingent upon the continued viability of the Wildwood loan was immaterial.

Moreover, even if we were to consider Drawer's affidavit, the averments contained therein relating to interdependency fail to establish that Surwood's obligation to repay its loan obligation was contingent upon continued funding of the Wildwood line of credit. Although Drawer averred that the "fortunes of Wildwood and Surwood were interwoven" and that the failure of Wildwood "would inevitably cause a failure of Surwood to meet its obligation under the Surwood loan," we perceive these statements as nothing more than truisms premised on the transactional relationship of the two entities. Drawer further averred that "Old Kent was aware of the interwoven futures of Wildwood and Surwood" and that Ryan had expressed to him that "Old Kent would not have made the Surwood [l]oan had Surwood not had a contract or agreement with Wildwood for the sale of the [p]roperty." Liberally construing these and the former statements (*Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 807 (affidavits in opposition to summary judgment must be liberally construed)), we conclude that the affidavit would lack the requisite factual basis necessary to establish a material issue of fact on the issue of whether Surwood's loan repayment obligations were contingent on continued funding of the Wildwood line of credit. Accordingly, the trial court could properly conclude, as a matter of law, that the Surwood and Wildwood loans were distinct and separate transactions.

Having resolved the threshold question, we turn to the dispositive issue of whether the trial court erred in granting summary judgment in favor of plaintiff on counts I, II, and V. In determining whether an issue of triable fact exists, the court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file (*Hoover*, 155 Ill. 2d at 410-11), and it must construe them strictly against the movant and liberally in favor of the opponent (*Purtill*, 111 Ill. 2d at 240). A triable issue of fact exists where there is a dispute as to the material facts or where undisputed material facts might lead reasonable persons to draw different inferences from

those facts. (*Hoover*, 155 Ill. 2d at 411; *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358; *Caponi v. Larry's 66* (1992), 236 Ill. App. 3d 660, 670.) Although summary judgment is encouraged as an aid to the expeditious disposition of a lawsuit, it is a drastic means of disposing of a lawsuit and should be granted only when the right of the movant is free and clear from doubt. *Hoover*, 155 Ill. 2d at 410.

■ Defendants admit in their brief that the Surwood loan payments were not made on time and that they "technically" defaulted. Defendants contend, however, that the allegations of their seven affirmative defenses raised issues of material fact, thus precluding the entry of summary judgment in favor of plaintiff. Specifically, defendants maintain that material issues of fact existed relative to whether plaintiff was estopped from revoking the Wildwood line of credit, whether plaintiff's decision to revoke the Wildwood line of credit was reasonable and in good faith, and whether plaintiff had a right to revoke the Wildwood line of credit.

While it is true that a summary judgment movant is obligated to demonstrate the absence of a factual dispute relative to all issues raised by the pleadings, including the absence of a factual dispute regarding affirmative defenses raised by a party's opponent (*West Suburban Mass Transit District v. Consolidated Rail Corp.* (1991), 210 Ill. App. 3d 484, 488), defendants fail to argue on appeal that a triable issue of fact existed relative to the Surwood loan. Instead, defendants' contentions focus on plaintiff's conduct as it related to the Wildwood line of credit. Defendants concede in their brief that they have "concentrated upon [plaintiff's] dealings with Wildwood because Surwood's ability to repay its loan from [plaintiff] was wholly dependent upon Wildwood purchasing land from Surwood." Because we have concluded that the Surwood and Wildwood loan transactions were distinct obligations, it is unnecessary to reach defendants' contentions related to the Wildwood loan. Counts I and II were directed solely against Surwood for the purpose of foreclosing the mortgages securing Surwood's $875,000 loan obligation. The counts seeking to foreclose the mortgage securing the Wildwood loan transaction remain pending in the trial court.

■ Finally, defendants raise no issue in their brief related to the trial court's granting summary judgment on count V, which sought to convert Drawer's personal guaranty. Issues not argued on appeal are considered waived. (134 Ill. 2d R. 341(e)(7).) Accordingly, we will not disturb the trial court's determination relative to that count.

For the foregoing reasons, the trial court's grant of summary judgment in favor of plaintiff on counts I, II, and V is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.