DOWD AND DOWD, LTD., Plaintiff-Appellant and Cross-Appellee, v. NANCY J. GLEASON et al., Defendants-Appellees and Cross-Appellants.

First District (5th Division) Nos. 1—95—2295, 1—95—2507, 1—95—2641 cons.

Opinion filed October 25, 1996.

918

Dan K. Webb, Scott J. Szala, Christopher S. Canning, and Nancy L. Carey, all of Winston & Strawn, of Chicago (Tobias Barry, of counsel), for appellant.

Frank K. Heap and James A. Romanyak, both of Bell, Boyd & Lloyd, and Jeffrey M. Marks, of Law Offices of Jeffrey M. Marks, both of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Defendants, Nancy J. Gleason (Gleason) and Douglas Shreffler

(Shreffler), were former officers and directors of the plaintiff law firm, Dowd & Dowd. Gleason and Shreffler left the firm and started their own firm, Gleason, McGuire and Shreffler (GMS). On July 25, 1991, plaintiff filed a suit against Nancy Gleason, Douglas Shreffler and GMS for, *inter alia*, breach of fiduciary duties, breach of employment contract and conspiracy. Gleason and Shreffler filed a motion for summary judgment and filed a counterclaim for amounts due under a stock purchase agreement and for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). After transfer of the case from the chancery division to the law division, Judge Kenneth Gillis entered summary judgment in favor of Gleason and Shreffler on the stock purchase count of their counterclaim and granted in part and denied in part their motion for summary judgment against plaintiff's claims. He also denied the motion by defendants for sanctions. As to count I, breach of fiduciary duty, Judge Gillis certified a question pursuant to Supreme Court Rule 308(a) as to whether plaintiff stated a cause of action against Gleason and Shreffler. On appeal, plaintiff contends that the trial court erred by: (1) considering defendants' motion for summary judgment because a previous judge had already denied the same motion; (2) making findings of fact in granting the motion for summary judgment; (3) weighing the credibility of the witnesses; (4) dismissing GMS as a party defendant; (5) ruling that Gleason and Shreffler did not breach the terms and conditions of their employment agreements; and (5) ruling that plaintiff was obligated to repurchase the shares of stock owned by Gleason and Shreffler. On cross-appeal, defendants contend that the trial court erred by: (1) denying their motion for summary judgment against count I of plaintiff's second amended complaint; and (2) denying their Rule 137 motion for sanctions.

BACKGROUND

Dowd & Dowd is a professional legal corporation. Michael Dowd (Dowd) was the senior partner in the firm and controlled 54.1% of the corporation's stock. When Gleason and Shreffler left Dowd & Dowd on December 31, 1990, ownership of shares in the firm was: Michael Dowd, 35 shares; Nancy Gleason, 10 shares; Kenneth Gurber, 10 shares; Robert Yelton III, 10 shares; Douglas Shreffler, 7 shares. However, Dowd had asked for and received from each of the other shareholders a proxy giving him the power to vote one of that shareholder's shares. Thus, Dowd could vote 39 shares, while the other partners, combined, could vote 33.

In the late 1970s, Northbrook Excess and Surplus Insurance Company, a subsidiary of Allstate Insurance Company (Allstate),

retained plaintiff for advice on insurance coverage for claims that were being made against Allstate's policyholders for injuries arising from exposure to asbestos products. After Gleason joined Dowd & Dowd in 1977, she worked on the Allstate files, and during the next 13 years, she became the primary person to whom Allstate's claim executives looked for counsel on asbestos and other environmental insurance coverage matters. By 1990, plaintiff's revenues from Allstate exceeded $6 million, which represented approximately 58% of the firm's revenues. At that time, approximately 12 of plaintiff's 25 attorneys practiced almost exclusively for Allstate.

At a Dowd & Dowd meeting on September 25, 1990, Michael Dowd announced that he was unilaterally making his son, Patrick, a partner, promoting him over Judith Gleason and another associate, Lawrence Szymanski, both of whom were senior to Patrick Dowd. Following Dowd's appointment of Patrick Dowd, Gleason, Shreffler and Judith Gleason began investigating the possibility of establishing a new, separate law firm, and by early November 1990, they decided to take preliminary steps to form their own law firm.

By December 1990, GMS had located office space, ordered furniture and equipment and initiated a banking relationship with the Harris Bank. On December 31, 1990, Gleason and Shreffler resigned from Dowd & Dowd and, with Philip McGuire and Judith Gleason, started the GMS law firm. On that day, Gleason and Shreffler went to Michael Dowd's home and informed him of their resignations as officers and directors of Dowd & Dowd.

Plaintiff filed a second amended complaint on June 10, 1993. It contained seven counts: (1) breach of fiduciary duty; (2) breach of employment contract; (3) interference with prospective advantage; (4) interference with contractual relationship with employees; (5) interference with contractual relationships with clients; (6) civil conspiracy; and (7) willful and wanton conduct. Relief sought included compensatory damages (measured by revenue generated by GMS through January 1, 1993, from clients formerly represented by Dowd & Dowd or net profits lost by Dowd & Dowd for those clients, whichever was larger), punitive damages, an accounting, a constructive trust on all revenue received by GMS for two years beginning with the entry of judgment, and recovery of bonuses and salaries paid to Gleason, Shreffler and others who had joined GMS from September through December 1990.

On July 30, 1993, defendants filed a motion for judgment on the pleadings or, alternatively, for summary judgment, pursuant to sections 2—615 and 2—1005 of the Code of Civil Procedure. 735 ILCS 5/2—615, 2—1005 (West 1992). On December 10, Judge Foreman

denied in part and granted in part defendants' motion and also ordered that defendants answer the viable counts.

On February 14, 1994, defendants filed their answer, along with a jury demand, affirmative defenses and a verified counterclaim. Counts I, III and IV were directed against both Dowd & Dowd and Michael Dowd personally. Count I alleged Dowd breached his fiduciary duties to the minority shareholders of the firm, count III was for interference with prospective advantage, and count IV was for willful and wanton conduct. Count II sought damages against Dowd & Dowd for failure to repurchase plaintiffs' shares in accordance with the share purchase agreement.

On June 6, 1994, defendants once again moved for summary judgment, which the trial court denied. On December 2, 1994, Judge Foreman transferred the cause from the chancery division to the law division, and the case was assigned to Judge Kenneth Gillis. After the assignment, the parties filed cross-motions for summary judgment and defendants filed a motion for sanctions.

After a hearing on the motions on June 26, 1995, Judge Gillis entered a comprehensive judgment order: (1) granting summary judgment in favor of Gleason, McGuire and Shreffler on counts III, VI, and VII of plaintiff's second amended complaint, (2) granting summary judgment in favor of Nancy Gleason for $100,000 and Shreffler for $70,000 on count II of the counterclaim; (3) granting summary judgment in favor of Gleason and Shreffler for count II of plaintiff's second amended complaint; (4) granting plaintiff's motion for summary judgment as to liability on count II; (5) denying Gleason and Shreffler's motion for judgment as to count I, alleging breach of fiduciary duty; (6) granting Gleason and Shreffler's motion for summary judgment as to count III and denying defendants' motion as to count VII; (7) granting Gleason and Shreffler leave to withdraw count III of their counterclaim; and (8) denying defendants' motion for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137).

Plaintiff appeals from the trial court's order, and defendants appeal the trial court's denial of their motion for sanctions and summary judgment on count I, alleging breach of fiduciary duty. As to that issue, Judge Gillis certified a question of law, pursuant to Illinois Supreme Court Rule 308(a), which is the subject of defendants' cross-appeal. This court consolidated the three appeals. We affirm in part; reverse in part and remand for further proceedings consistent with this opinion.

## ANALYSIS

■ Initially, we note that the defendants have filed a motion to

impose sanctions under Supreme Court Rule 375 (134 Ill. 2d R. 375) for violating Supreme Court Rule 341 (134 Ill. 2d R. 341) and Rule 3.3(a)(1) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 3.3(a)(1)). Defendants assert that parts of the "nature of the case" and "statement of facts" sections of plaintiff's brief are argumentative and inaccurate and should be stricken. This motion has been taken with the case. We have considered plaintiff's brief and, although we do not condone argumentative portions of plaintiff's statement of the "nature of the case" and "statement of the facts," plaintiff's violations of Supreme Court Rule 341 (134 Ill. 2d R. 341) are not flagrant and do not warrant sanctions under Supreme Court Rule 375 (134 Ill. 2d R. 375). *Ryan v. Katz*, 234 Ill. App. 3d 536, 536-37, 600 N.E.2d 1206 (1992). Accordingly, we elect to consider the merits of the case.

## I

■ Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Miller v. Danville Elks Lodge 332*, 211 Ill. App. 3d 145, 151, 569 N.E.2d 1160 (1991). In making this decision, the trial court may draw inferences from undisputed facts; if reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by the trier of fact and the motion should be denied. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272, 586 N.E.2d 1211 (1992). On review, this court reviews the granting of summary judgment *de novo*—that is, this court must determine if the trial court correctly decided that no genuine issues of material fact were present. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115, 617 N.E.2d 1251 (1993).

■ Plaintiff's first arguments on appeal concern the procedure by which the trial court decided this case. Plaintiff contends that Judge Gillis erred in considering the defendants' motions for summary judgment because Judge Foreman already had denied the same dispositive motions. Plaintiff argues that virtually all the facts and arguments relied upon by defendants in the hearing before Judge Gillis were already set forth in the briefs and memoranda considered by Judge Foreman and should not have been reconsidered. We disagree. The Illinois Supreme Court has repeatedly held that the circuit court has inherent power to modify or vacate an interlocutory order granting summary judgment any time before final judgment. *Rowe v. State Bank*, 125 Ill. 2d 203, 213, 531 N.E.2d 1358 (1988); *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 121, 382 N.E.2d 1217 (1978); *Leopold v.*

*Levin*, 45 Ill. 2d 434, 446, 259 N.E.2d 250 (1970). However, the supreme court has disapproved of one judge reviewing interlocutory orders entered by another judge where there is evidence of bad faith or "judge shopping" by the party who obtains an adverse ruling. *Rowe*, 125 Ill. 2d at 214; see *People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249, 357 N.E.2d 534 (1976). Here, there is no evidence of bad faith on the part of the defendants in renewing their motions for summary judgment. Nor is there evidence of "judge shopping," as the record shows that the cause was assigned to another judge in the ordinary course of judicial reassignment. Therefore, we believe that the trial court acted within the bounds of its authority in ruling on defendants' motion for summary judgment. See *Rowe*, 125 Ill. 2d at 214; *Pack v. Santa Fe Park Enterprises, Inc.*, 209 Ill. App. 3d 648, 655, 568 N.E.2d 360 (1991).

■ Next, plaintiff contends that the court erred as a matter of law when it made findings of fact in granting the motions for summary judgment. In its order, the trial court found as follows:

"1. That on December 10, 1993, Judge Foreman entered an order dismissing Counts IV and V of the Second Amended Complaint as to all defendants. 2. Plaintiff has offered no credible or admissible evidence that defendants solicited the Allstate account prior to December 31, 1990. 3. That the renting of office space, buying and leasing furniture and equipment, leasing of telephones, copying equipment and the like, establishing banking relationships, the minor use of Dowd & Dowd's office space and supplies to draft letters, obtaining Federal identification numbers and the like are preparatory to setting up a law firm and, as such, under the *Veco* and *Ellis* cases, are not actionable."

As stated earlier, a trial court should grant a motion for summary judgment only when no genuine issue of material fact exists. When granting that motion, a trial court resolves only questions of law. By definition, a trial court should deny summary judgment if it must make "findings of fact." *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070 (1992). Here, however, we do not believe that the trial court was making findings of fact when it entered the order. We believe that the court made statements which explained its reasons for ruling on the motions for summary judgment. In any event, in determining whether the record reveals disputed issues of material fact, we may rely on any grounds called for by the record and we are not bound by the trial court's reasoning. See *Makowski*, 249 Ill. App. 3d at 115.

■ Plaintiff also contends that the trial court violated the rules

regarding summary judgment when it weighed the credibility of witnesses. Specifically, the plaintiff argues that the trial court erred by giving "zero weight" to the deposition testimony of Daniel Kummer, a former vice-president of Allstate, regarding changes at Dowd & Dowd and Allstate giving business to another firm as early as November 2, 1990. We agree. In granting summary judgment, the judge must not attempt to weigh the evidence. *In re Estate of Hoover*, 226 Ill. App. 3d 422, 427, 589 N.E.2d 899 (1992); *Gatlin v. Ruder*, 137 Ill. 2d 284, 294, 560 N.E.2d 586 (1990). However, this error is harmless because an appellate court reviews a trial court's grant of summary judgment *de novo* and affords the trial court's decision no deference. *Martin v. State Journal-Register*, 244 Ill. App. 3d 955, 962, 612 N.E.2d 1357 (1993).

## II

We first address the question of law certified by the trial court pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)) because it is a foundation for disposing of other issues presented in the case. Appeals under Rule 308 should be available only in the exceptional case where there are compelling reasons for rendering an early determination of a critical question of law and where a determination of the issue would materially advance the litigation. *Kincaid v. Smith*, 252 Ill. App. 3d 618, 622, 625 N.E.2d 750 (1993). Consequently, our review is strictly limited to the question certified by the trial court. *McMichael v. Michael Reese Health Plan Foundation*, 259 Ill. App. 3d 113, 116, 638 N.E.2d 1117 (1994). This court should not expand upon the question to answer other issues that might have been included or rule on the propriety of any underlying order. *McMichael*, 259 Ill. App. 3d at 116; *Danner v. Norfolk & Western Ry. Co.*, 271 Ill. App. 3d 598, 601, 648 N.E.2d 603 (1995). Therefore, although plaintiff and defendants have included discussion regarding the propriety of the trial court's order denying summary judgment on the fiduciary duty count, we will limit our discussion to the question certified by the trial court. See *Danner*, 271 Ill. App. 3d at 601; *Kincaid*, 252 Ill. App. 3d at 621.

The court identified the question of law as follows:

"Whether the plaintiff law firm, a professional corporation, has a cause of action for breach of fiduciary duties against its former Officers or Directors who:

a. Departed the plaintiff firm without notice to the other Officers or Directors;

b. Had accomplished substantial planning of their departure before leaving; and planned to solicit business or clients of Dowd and Dowd;

c. Had made substantial arrangements, in terms of new office space, telephones, equipment, obtaining a federal employer identification number, etc., without knowledge of the Officers or Directors;

d. Where more than one Officer or Director, and other support staff, left simultaneously, from the Plaintiff firm;

e. But, where there is no evidence that legal clients or legal business were solicited or sought before the departure. On the other hand, where there is no evidence that the defendants, departing Officers and Directors solicited clients or sought the firm's legal business before departing, should the claim of plaintiff, a professional corporation be dismissed (the Court certifies subparagraph e above over Plaintiff's objection as to the question of the existence of solicitation)."

█ In the absence of fraud, a contractual restrictive covenant, or the improper taking of a customer list, former employees may compete with their former employers and solicit former customers provided there was no demonstrable business activity before termination of employment. *Dowell v. Bitner*, 273 Ill. App. 3d 681, 691, 652 N.E.2d 1372 (1995). However, corporate officers owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed. *H. Vincent Allen & Associates, Inc. v. Weis*, 63 Ill. App. 3d 285, 291, 379 N.E.2d 765 (1978); *Smith-Schrader Co. v. Smith*, 136 Ill. App. 3d 571, 577, 483 N.E.2d 283 (1985). The resignation of an officer, however, will not sever liability for transactions completed after the termination of the party's association with the corporation or transactions that began during the existence of the relationship or were founded on information acquired during the relationship. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 161, 611 N.E.2d 1054 (1993); *Dowell*, 273 Ill. App. 3d at 691.

█ Application of the aforementioned legal principles to the case *sub judice* demonstrates that plaintiff stated a cause of action for breach of fiduciary duty. As a fiduciary, the corporate officer owes, at the very minimum, an obligation to deal honestly and fairly with his corporation. *Unichem Corp. v. Gurtler*, 148 Ill. App. 3d 284, 290, 498 N.E.2d 724 (1986). Because defendants are corporate officers, their decisions that affect the corporation must be disclosed. Leslie Henkels, a former paralegal with Dowd & Dowd, testified in her deposition that on or about August 6, 1990, the defendants informed her that they had decided to form their own firm. However, it is undisputed that defendants failed to inform plaintiff that defendants were going to start their own law firm until their resignations.

Defendants' prewalkout activities also support the view that they were less than honest or aboveboard in dealing with the corporation. Henkels testified that in the fall of 1990, defendants told her to update and copy service lists of all the environmental department coverage cases in preparation for starting the new firm. She also testified that, in late 1990, Maureen Gleason directed her to update a reference manual that listed plaintiff's asbestos/environmental departmental cases. Also, by November 7, 1990, defendants had obtained a lease to rent office space, ordered office equipment and furniture, applied for a $400,000 line of credit from Harris Bank and obtained a federal employer identification number.

Although defendants contend that they did not solicit Dowd & Dowd employees until after their resignations, there is some evidence that tends to contradict this contention. Henkels testified that she and other Dowd & Dowd employees were solicited before December 31, 1990. Henkels stated that she attended a formal meeting with Shreffler, Gleason and others to discuss which people GMS wanted to take with them. Maureen Gleason testified that she decided to join GMS in late October or early November 1990 after discussions with Nancy Gleason, Judith Gleason and Douglas Shreffler. In the end, more than 25 employees of Dowd & Dowd were hired to work for GMS.

There was also some evidence regarding pretermination solicitation of Allstate. Allstate employees Lynn Crim and George Riley testified that the defendants did not solicit Allstate until after December 31, 1990. However, Henkels testified that before December 31, 1990, one of the defendants informed her that they were able to proceed with walkout activities because GMS had obtained Allstate as a client. Henkels further testified that on December 31, 1990, Nancy Gleason directed her to collect and destroy copies of Allstate representative George Riley's letter transferring files to GMS. Also, Timothy Nolan, a former attorney employed by GMS, testified that Virginia Vermillion, a GMS attorney, admitted to him that GMS had obtained Allstate as a client long before defendants left Dowd & Dowd. Perhaps the strongest evidence that defendants solicited Allstate before their resignations comes from the credit memorandum prepared by Harris Bank vice-president David Varnerin. The memo stated, *inter alia*, that "Allstate stands ready to give them as much business as they can handle" and "Discussions have been held with their principal client—Allstate. The firm has been assured that their invoices will be paid promptly within 30 days."

Accordingly, based on the foregoing evidence of defendants' pretermination activities, we believe that the plaintiff sufficiently stated a cause of action for breach of fiduciary duty.

## III

■ Plaintiff contends that the trial court erred in dismissing GMS as a party defendant. Specifically, plaintiff argues that the court erred in ruling that GMS was not part of a civil conspiracy to injure plaintiff. Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 235, 560 N.E.2d 324 (1990). The necessary elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an unlawful act or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Vance v. Chandler*, 231 Ill. App. 3d 747, 750, 597 N.E.2d 233 (1992). The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888 (1994).

■ Plaintiff argues that GMS is a proper party defendant because Gleason and Shreffler committed conspiracy by entering into an agreement to injure Dowd & Dowd and its assets through participation in unlawful acts or lawful acts in an unlawful manner. Therefore, GMS, the entity of the conspiracy used by Gleason and Shreffler, should not have been dismissed from the case. Plaintiff relies on *Preferred Meal Systems, Inc. v. Guse*, 199 Ill. App. 3d 710, 557 N.E.2d 506 (1990), to support its argument. In *Preferred*, the plaintiff corporation brought suit seeking injunctive relief against former officers and the new entity the former officers formed, for violation of a contract not to compete and breach of their fiduciary duties. The trial court refused to enjoin the officers and the newly created company. The appellate court reversed, holding that the officers as well as the new company should be enjoined, "considering that it was the instrumentality employed by [the former officers] in implementing and perfecting the breach of their duty to [the plaintiff]." *Preferred*, 199 Ill. App. 3d at 726.

Plaintiff argues that, similar to the defendant company in *Preferred*, GMS is a "refraction" of Gleason's and Shreffler's conduct and is the "creature spawned" by them. See *Preferred*, 199 Ill. App. 3d at 727. On the other hand, defendants argue that the civil conspiracy cannot stand because civil conspiracy is not an independent cause of action in Illinois. However, our supreme court in *Adcock* unequivocally states that "civil conspiracy is a recognized cause of action in Illinois." *Adcock*, 164 Ill. 2d at 62. To state a cause of action for con-

spiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. *Adcock*, 164 Ill. 2d at 63.

Defendant also argues that even if a cause of action exists for civil conspiracy, it is duplicative of other counts alleged. We agree. The allegations pled in the second amended complaint to support the conspiracy count were the same acts pled in the breach of fiduciary and other counts. Also, plaintiff did not plead that the damages suffered by the breach of fiduciary duty were different from the damages suffered by the conspiracy claim. Although conspiracy is part of the consideration for the fiduciary duty claim, plaintiff cannot have both a claim for civil conspiracy and for breach of fiduciary duty. Therefore, the trial court properly dismissed the civil conspiracy claim against GMS. See *Rumbold v. Town of Bureau*, 221 Ill. App. 3d 222, 230, 581 N.E.2d 809 (1991).

## IV

 Plaintiff next contends that the trial court erred in ruling that GMS was not liable for willful and wanton conduct. Plaintiff argues that this is a question of fact to be resolved by the jury based on the circumstances of the case. Defendants argue that the trial court properly granted summary judgment on this count because the complaint failed to state a claim for willful and wanton conduct. We must agree with the trial court because our supreme court has stated that "[t]here is no separate and independent tort of 'willful and wanton' misconduct." *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402 (1994); see *Mucklow v. John Marshall Law School*, 176 Ill. App. 3d 886, 894-95, 531 N.E.2d 941 (1988). The label "willful and wanton conduct" is used to characterize conduct necessary to sustain an action for negligent or intentional behavior. *Ziarko*, 161 Ill. 2d at 275. When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not be merely labelling the conduct willful and wanton. *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943, 654 N.E.2d 508 (1995). Conclusional statements of fact or law will not suffice to state a cause of action regardless of whether they succeed in generally informing the defendant of the nature of the claim against him or her. *Winfrey*, 274 Ill. App. 3d at 943; *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 519-20, 544 N.E.2d 733 (1989).

 In the instant case, the trial court found that plaintiff's allegations for willful and wanton misconduct were duplicative of al-

legations in other counts for punitive damages. We agree with the trial court. The count for willful and wanton conduct was based on facts already alleged in other counts. Furthermore, a claim based on willful and wanton conduct seeks punitive damages based on wrongful conduct that rises to a level above mere negligence. Because plaintiff seeks punitive damages in its prayers for relief in all of the counts except count II, plaintiff's cause of action for willful and wanton conduct is duplicative, and the trial court properly dismissed GMS as a defendant to this claim. See *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238 (1996).

## V

Plaintiff also contends that the trial court erred in ruling that defendants did not interfere with plaintiff's prospective economic advantage. In order to successfully plead an action for interference with prospective economic advantage, one must plead: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Galinski v. Kessler*, 134 Ill. App. 3d 602, 607, 480 N.E.2d 1176 (1985); *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 357 N.E.2d 211 (1976).

Defendants argue that plaintiff had no business expectancy with Allstate because Allstate would have terminated the relationship with Dowd & Dowd even if Gleason had not agreed to represent Allstate. We disagree. The fact that a relationship between an attorney and his client is terminable at will does not *ipso facto* defeat an action for tortious interference because the action is not dependent upon an enforceable contract but, rather, upon an existing relationship. *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1013, 654 N.E.2d 675 (1995). In the instant case, plaintiff had a valid 14-year business relationship with Allstate and an expectancy of a continuing relationship. Gleason and Shreffler knew of this existing relationship and of plaintiff's expectancy that the relationship would continue. We cannot say that a trier of fact cannot find that defendants breached fiduciary duties and caused the termination of the relationship or expectancy between plaintiff and Allstate with resultant damage to the plaintiff. Thus, in viewing the evidence, we believe that the trial court improperly granted summary judgment for this count.

## VI

Plaintiff next argues that the trial court erred in ruling that

defendants were not required to give 90 days' written notice before their resignations. Paragraph 4 of the employment agreements signed by Gleason and Shreffler provides:

"4. Term of employment. The term of the employee's employment hereunder shall be from the date hereof until the end of the Corporation's current fiscal year and from year to year thereafter, subject to termination at any time upon 90 days' prior written notice either by the Corporation (acting by unanimous vote of the Board of Directors, excluding the Employee if he is a Board member) to the Employee or by the Employee to the Corporation."

It is axiomatic that when a contract is judicially interpreted, the primary goal is to discover and give effect to the intent of the parties at the time they entered into the contract. *Old Kent Bank-St. Charles N.A. v. Surwood Corp.*, 256 Ill. App. 3d 221, 228, 627 N.E.2d 1192 (1994). In construing the terms of the contract, a court looks first only to the language employed by the parties in describing their intent; if such language is clear and unambiguous, it will be given its natural and ordinary meaning. *Old Kent Bank*, 256 Ill. App. 3d at 228; *Lenzi v. Morkin*, 103 Ill. 2d 290, 293, 469 N.E.2d 178 (1984). Under the general rules of contract construction, the determinative factor is the intention of the parties, which can best be determined by considering the contract as a whole, reviewing each part in light of the others. *Dolezal v. Plastic & Reconstructive Surgery*, 266 Ill. App. 3d 1070, 1080, 640 N.E.2d 1359 (1994).

■ Defendants argue that they did not breach their contract because it expired by its own terms as of December 31, 1990, and they elected not to renew their contracts. We note that the trial court ruled that Gleason and Shreffler did not have to give any notice within the last quarter of any year. On appeal, neither party embraces the trial court's interpretation of the notice required to terminate. The agreement unambiguously provides that employment is "subject to termination at any time upon 90 days prior written notice" either by the corporation or the employee. We believe that both the defendants' and the trial court's interpretations of the contract are contrary to the express language of the contract and disregard the purpose of the 90-day provision. We believe that the trial court's interpretation can permit the employer to lock out the employee on January 1 of any year without any prior notice, on the one hand, and can also permit the employee, without prior notice, to leave work permanently on December 31 of any year, on the other hand. Clearly such was not the intent of the parties. The purpose of the notice is to allow the parties the opportunity to fulfill existing obligations and re-

sponsibilities to the employer, employee and the client. Contrary to the trial court's interpretation, there is no reason why this purpose should not be applicable during the last three months of the year or the last day of the year. We agree with plaintiff's contention that the intent of the parties and the purpose of the provision are to require 90 days' prior written notice by either party at any time. Accordingly, we hold that the trial court improperly granted defendants' motion for summary judgment for breach of the 90-day notice provision.

## VII

■ Plaintiff also contends that the trial court incorrectly applied Rule 5.6 of the Rules of Professional Conduct (134 Ill. 2d R. 5.6) retroactively to negate terms of the employment contracts. The provisions in the employment agreements on which plaintiff relies state:

"10. Nonsolicitation. During the term of this Agreement and for a period of two (2) years following the termination of this Agreement, the Employee will not directly or indirectly, solicit or endeavor to entice away any clients of the Corporation without the prior written consent of the Corporation. For the purpose of this subsection, the term 'solicit' shall mean to call or contact or to lend assistance in any way to any person or entity in calling or contacting a client of the Corporation in a manner detrimental to the business of the [C]orporation***."

On August 1, 1990, Rule 5.6 became effective and states:

"A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement***." 134 Ill. 2d R. 5.6(a).

■ The provision set forth in Rule 5.6 clearly prohibits the plaintiff's employment agreement regarding nonsolicitation of clients. Plaintiff argues that Rule 5.6 does not apply because it was enacted over two years after Gleason and Shreffler signed the noncompetition agreements in the case *sub judice*. As a result, plaintiff argues that to invalidate the noncompetition clause, which was signed before August 1, 1990, would be *ex post facto* legislation. We disagree. The supreme court has exclusive jurisdiction to regulate attorney conduct. See *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494, 519 N.E.2d 898 (1988). Supreme court rules are not analogous to penal laws enacted by a legislative branch of government and are not governed by the statutory prohibition against *ex post facto* laws. See *In re Samuels*, 126 Ill. 2d 509, 524, 535 N.E.2d 808 (1989). We believe that, for public policy reasons, such as protecting the public's right to access

to counsel, the supreme court intended that Rule 5.6 apply to all contracts existing at the time the rule went into effect. See M. Lewis, *Today's Associate, Tomorrow's Competitor: New Rules Doom Noncompetition Agreements*, 79 Ill. B.J. 330 (1991).

## VIII

Plaintiff next contends that the trial court erred in granting summary judgment in favor of Gleason and Shreffler on their counterclaim for the repurchase of the shares of stock owned by Gleason and Shreffler. At issue are two documents that Gleason and Shreffler signed. The first document provides, in pertinent part:

"1.1 Purchase Obligation. Upon the death, total disability, or termination of employment with the Company (for whatever reason) of Shareholder ('Event of Redemption'), the Company shall purchase, and the Shareholder or the estate of a deceased Shareholder shall sell to the Company all of the shares of the Company owned by Shareholder, whether now owned or hereafter acquired. The purchase price of such share shall be computed in accordance with the provisions of Section 1.2 of this Agreement ***.

1.2 Purchase Price. The purchase price per share for purposes of Section 1.1 hereof shall be $10,000.

\* \* \*

4.5 If any time payments are to be made under this Agreement to the Shareholder or Shareholder's beneficiary or beneficiaries, the Shareholder or any beneficiary is indebted to the Company, then the Company, in its discretion, may withhold any payment, in whole or in part, and apply such withheld amount to the payment or partial payment of such indebtedness."

A second group of documents, the employment agreements, state:

"In addition to any damages which the Corporation may be entitled in the event of Employee's breach of the covenants therein, the Corporation shall be entitled to (a) set off its damages against any amounts due to the Employee from the Corporation as severance pay, wages, payment for stock or otherwise, and/or (b) preliminary and injunctive relief."

Plaintiff asserts that by reading these documents together, it is clear under the language of paragraph 4.5 that plaintiff had a right to set off its damages resulting from defendants' breaches of the nonsolicitation and nondisclosure of confidential information provisions against any amounts due to them for "payment of stock" or "debt" under the share purchase agreements. Plaintiff concludes that because the corporation suffered damage far in excess of the purchase price of the stock, defendants are not entitled to recover any amount

for the redemption of their shares. Conversely, defendants argue that plaintiff was obligated to buy the shares that Gleason and Shreffler owned when they left the firm for "whatever reason." Therefore, defendants conclude that the reason for the departure was irrelevant.

Defendants cite *Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 578 N.E.2d 199 (1991). We believe *Anderson* is applicable to the case *sub judice*. In *Anderson*, a minority shareholder left an accounting firm. The firm argued that it was justified in refusing to honor an agreement to purchase his shares because he had solicited clients prior to leaving the firm. The court held that the breach of the plaintiff's duty was not a proper affirmative defense because the shareholder's agreement provided the plaintiff with the right to have his stock redeemed. *Anderson*, 218 Ill. App. 3d at 266.

■ We agree with the plaintiff's assertion that the first document and the second group of documents must be read together. Similar to *Anderson*, we do not believe that breach of fiduciary duty is a proper affirmative defense because the shareholder's agreement provides for the defendants in the instant case to have their stock redeemed. Also, similar to *Anderson*, we do not believe that plaintiff is entitled to a right to have an unconditional setoff at this time. This is because, at this juncture, the right to a setoff is both inchoate and speculative. Also, plaintiff has averred that the value of the corporation has been diminished due to the alleged solicitation of Allstate. It is conceivable that Gleason's and Shreffler's liability to plaintiff may exceed what is due Gleason and Shreffler pursuant to the stock purchase agreement. Therefore, we affirm the entry of summary judgment in favor of defendants entitling Gleason and Shreffler to have their shares redeemed under the shareholder's agreement. However, under the circumstances and in fairness to plaintiff, on remand of the case to the trial court, the trial court is hereby instructed to stay enforcement of the repurchase of the shares until final adjudication of the plaintiff's claim for breach of fiduciary duty. See *Anderson*, 218 Ill. App. 3d at 267-68.

## IX

■ Defendants contend on cross-appeal that the trial court erred in denying their motion for sanctions. Defendants based their motion for sanctions on Supreme Court Rule 137 (134 Ill. 2d R. 137), which states in pertinent part:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after

reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Because this rule is penal in nature, it must be strictly construed. *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.*, 256 Ill. App. 3d 1002, 1006, 628 N.E.2d 426 (1993). The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time of the filing. The party requesting sanctions is obligated to show that the opposing party made assertions of fact that were untrue and were made without reasonable cause. *In re Estate of Wernick*, 127 Ill. 2d 61, 77, 535 N.E.2d 876 (1989). The determination of whether to impose sanctions or to award attorney fees rests within the sound discretion of the trial court, and that decision is entitled to great weight and will not be disturbed on review absent an abuse of discretion. *Bennett & Kahnweiler, Inc.*, 256 Ill. App. 3d at 1007.

■ Defendants contend that plaintiff failed to conduct a reasonable inquiry before filing the case. Defendants base this contention on Michael Dowd's deposition testimony in which he stated that he did not make an investigation on whether defendants solicited the Allstate account before leaving the firm. However, as we discussed earlier regarding count I for breach of fiduciary duty, there was enough evidence apparent to Dowd without conducting a formal investigation.

Defendants also contend that the complaint was not well grounded in fact because Riley and Crim flatly and repeatedly denied that any pre-December 31, 1990, solicitation had taken place. However, plaintiff was not obligated to believe Riley and Crim and, in fact, elicited credible testimony from other witnesses refuting Riley's and Crim's claims.

Finally, defendants argue that the suit was filed for an improper purpose. Defendants base this contention on the deposition testimony of Michael Dowd where he stated that he filed suit to obstruct Nancy Gleason and Douglas Shreffler from taking his business away from him. Defendants claim that the case was, therefore, founded on vengeance, and prosecuted with spite. We disagree. Since we consider some of Dowd's contentions to be meritorious, we cannot say that vengeance was Dowd's primary purpose for filing the suit in the case *sub judice.*

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and

this cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

McNULTY, P.J., and GORDON, J., concur.