FIFTH DIVISION 
 October 25, 1996

Nos. 1-95-2295, 1-95-2507 and
1-95-2641 consolidated

DOWD AND DOWD, LTD., ) APPEAL FROM THE
 ) CIRCUIT COURT OF
 Plaintiff-Appellant and ) COOK COUNTY
 Cross-Appellee, )
 ) No. 91 CH 6767
 ) Transferred to Law
NANCY J. GLEASON, DOUGLAS G. )
SHREFFLER, and GLEASON, McGUIRE )
and SHREFFLER, ) 
 ) THE HONORABLE
 Defendants-Appellees and ) KENNETH GILLIS
 Cross-Appellants. ) JUDGE PRESIDING.

 
 JUSTICE COUSINS delivered the opinion of the court:
 Defendants, Nancy J. Gleason (Gleason) and Douglas Shreffler
(Shreffler) were former officers and directors of the plaintiff
law firm, Dowd & Dowd. Gleason and Shreffler left the firm and
started their own firm, Gleason, McGuire and Shreffler (GMS). On
July 25, 1991, plaintiff filed a suit against Nancy Gleason,
Douglas Shreffler and GMS for, inter alia, breach of fiduciary
duties, breach of employment contract and conspiracy. Gleason
and Shreffler filed a motion for summary judgment and filed a
counterclaim for amounts due under a stock purchase agreement and
for sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R.
137). After transfer of the case from the chancery division to
the law division, Judge Kenneth Gillis entered summary judgment
in favor of Gleason and Shreffler on the stock purchase count of
their counterclaim and granted in part and denied in part their
motion for summary judgment against plaintiff's claims. He also
denied the motion by defendants for sanctions. As to count I,
breach of fiduciary duty, Judge Gillis certified a question
pursuant to Supreme Court Rule 308(a) as to whether plaintiff
stated a cause of action against Gleason and Shreffler. On
appeal, plaintiff contends that the trial court erred by: (1)
considering defendants' motion for summary judgment because a
previous judge had already denied the same motion; (2) making
findings of fact in granting the motion for summary judgment; (3)
weighing the credibility of the witnesses; (4) dismissing GMS as
a party defendant; (5) ruling that Gleason and Shreffler did not
breach the terms and conditions of their employment agreements;
and (5) ruling that plaintiff was obligated to repurchase the
shares of stock owned by Gleason and Shreffler. On cross-appeal,
defendants contend that the trial court erred by: (1) denying
their motion for summary judgment against count I of plaintiff's
second amended complaint; and (2) denying their Rule 137 motion
for sanctions.
BACKGROUND
 Dowd & Dowd is a professional legal corporation. Michael
Dowd (Dowd) was the senior partner in the firm and controlled
54.1% of the corporation's stock. When Gleason and Shreffler left
Dowd & Dowd on December 31, 1990, ownership of shares in the firm
was: Michael Dowd, 35 shares; Nancy Gleason, 10 shares; Kenneth
Gurber, 10 shares; Robert Yelton III, 10 shares; Douglas
Shreffler, 7 shares. However, Dowd had asked for and received
from each of the other shareholders a proxy giving him the power
to vote one of that shareholder's shares. Thus, Dowd could vote
39 shares, while the other partners, combined, could vote 33.
 In the late 1970s, Northbrook Excess and Surplus Insurance
Company, a subsidiary of Allstate Insurance Company (Allstate),
retained plaintiff for advice on insurance coverage for claims
that were being made against Allstate's policyholders for
injuries arising from exposure to asbestos products. After
Gleason joined Dowd & Dowd in 1977, she worked on the Allstate
files, and during the next 13 years, she became the primary
person to whom Allstate's claim executives looked for counsel on
asbestos and other environmental insurance coverage matters.
By 1990, plaintiff's revenues from Allstate exceeded $6 million,
which represented approximately 58% of the firm's revenues. At
that time, approximately 12 of plaintiff's 25 attorneys practiced
almost exclusively for Allstate.
 At a Dowd & Dowd meeting on September 25, 1990, Michael Dowd
announced that he was unilaterally making his son, Patrick, a
partner, promoting him over Judith Gleason and another associate,
Lawrence Szymanski, both of whom were senior to Patrick Dowd.
Following Dowd's appointment of Patrick Dowd, Gleason, Shreffler
and Judith Gleason began investigating the possibility of
establishing a new, separate law firm, and by early November
1990, they decided to take preliminary steps to form their own
law firm.
 By December 1990, GMS had located office space, ordered
furniture and equipment and initiated a banking relationship with
the Harris Bank. On December 31, 1990, Gleason and Shreffler
resigned from Dowd & Dowd and, with Philip McGuire and Judith
Gleason, started the GMS law firm. On that day, Gleason and
Shreffler went to Michael Dowd's home and informed him of their
resignations as officers and directors of Dowd & Dowd.
 Plaintiff filed a second amended complaint on June 10, 1993. 
It contained seven counts: (1) breach of fiduciary duty; (2)
breach of employment contract; (3) interference with prospective
advantage; (4) interference with contractual relationship with
employees; (5) interference with contractual relationships with
clients; (6) civil conspiracy; and (7) willful and wanton
conduct. Relief sought included compensatory damages (measured by
revenue generated by GMS through January 1, 1993, from clients
formerly represented by Dowd & Dowd or net profits lost by Dowd &
Dowd for those clients, whichever was larger), punitive damages,
an accounting, a constructive trust on all revenue received by
GMS for two years beginning with the entry of judgment, and
recovery of bonuses and salaries paid to Gleason, Shreffler and
others who had joined GMS from September through December 1990.
 On July 30, 1993, defendants filed a motion for judgment on
the pleadings or, alternatively, for summary judgment, pursuant
to sections 2-615 and 2-1005 of the Code of Civil Procedure. 735
ILCS 5/2-615; 2-1005 (West 1992). On December 10, Judge Foreman
denied in part and granted in part defendants' motion and also
ordered that defendants answer the viable counts.
 On February 14, 1994, defendants filed their answer, along
with a jury demand, affirmative defenses and a verified
counterclaim. Counts I, III and IV were directed against both
Dowd & Dowd and Michael Dowd personally. Count I alleged Dowd
breached his fiduciary duties to the minority shareholders of the
firm, count III was for interference with prospective advantage,
and count IV was for willful and wanton conduct. Count II sought
damages against Dowd & Dowd for failure to repurchase plaintiffs'
shares in accordance with the share purchase agreement. 
 On June 6, 1994, defendants once again moved for summary
judgment, which the trial court denied. On December 2, 1994,
Judge Foreman transferred the cause from the chancery division to
the law division, and the case was assigned to Judge Kenneth
Gillis. After the assignment, the parties filed cross-motions
for summary judgment and defendants filed a motion for sanctions.
 After a hearing on the motions on June 26, 1995, Judge
Gillis entered a comprehensive judgment order: (1) granting
summary judgment in favor of Gleason, McGuire and Shreffler on
counts III, VI, and VII of plaintiff's second amended complaint,
(2) granting summary judgment in favor of Nancy Gleason for
$100,000 and Shreffler for $70,000 on count II of the
counterclaim; (3) granting summary judgment in favor of Gleason
and Shreffler for count II of plaintiff's second amended
complaint; (4) granting plaintiff's motion for summary judgment
as to liability on count II; (5) denying Gleason and Shreffler's
motion for judgment as to count I, alleging breach of fiduciary
duty; (6) granting Gleason and Shreffler's motion for summary
judgment as to count III and denying defendants' motion as to
count VII; (7) granting Gleason and Shreffler leave to withdraw
count III of their counterclaim; and (8) denying defendants'
motion for sanctions pursuant to Supreme Court Rule 137 (134 Ill.
2d R. 137).
 Plaintiff appeals from the trial court's order, and
defendants appeal the trial court's denial of their motion for
sanctions and summary judgment on count I, alleging breach of
fiduciary duty. As to that issue, Judge Gillis certified a
question of law, pursuant to Illinois Supreme Court Rule 308(a),
which is the subject of defendants' cross-appeal. This court
consolidated the three appeals. We affirm in part; reverse in
part and remand for further proceedings consistent with this
opinion.
ANALYSIS
 Initially, we note that the defendants have filed a motion
to impose sanctions under Supreme Court Rule 375 (134 Ill. 2d R.
375) for violating Supreme Court Rule 341 (134 Ill. 2d R. 341)
and Rule 3.3(a)(1) of the Illinois Rules of Professional Conduct
(134 Ill. 2d R. 3.3(a)(1)). Defendants assert that parts of the
"nature of the case" and "statement of facts" sections of
plaintiff's brief are argumentative and inaccurate and should be
stricken. This motion has been taken with the case. We have
considered plaintiff's brief and, although we do not condone
argumentative portions of plaintiff's statement of the "nature of
the case" and "statement of the facts," plaintiff's violations of
Supreme Court Rule 341 (134 Ill. 2d R. 341) are not flagrant and
do not warrant sanctions under Supreme Court Rule 375 (134 Ill.
2d R. 375). Ryan v. Katz, 234 Ill. App. 3d 536, 536-37, 600
N.E.2d 1206 (1992). Accordingly, we elect to consider the merits
of the case.
 I
 Summary judgment is properly granted when the pleadings,
depositions, and affidavits show that no genuine issue of
material fact exists and the moving party is entitled to judgment
as a matter of law. Miller v. Danville Elks Lodge 332, 211 Ill.
App. 3d 145, 151, 569 N.E.2d 1160 (1991). In making this
decision, the trial court may draw inferences from undisputed
facts; if reasonable persons could draw divergent inferences from
the undisputed facts, the issue should be decided by the trier of
fact and the motion should be denied. Loyola Academy v. S&S Roof
Maintenance, Inc., 146 Ill. 2d 263, 272, 586 N.E.2d 1211 (1992). 
On review, this court reviews the granting of summary judgment de
novo -- that is, this court must determine if the trial court
correctly decided that no genuine issues of material fact were
present. Makowski v. City of Naperville, 249 Ill. App. 3d 110,
115, 617 N.E.2d 1251 (1993).
 Plaintiff's first arguments on appeal concern the procedure
by which the trial court decided this case. Plaintiff contends
that Judge Gillis erred in considering the defendants' motions
for summary judgment because Judge Foreman already had denied the
same dispositive motions. Plaintiff argues that virtually all
the facts and arguments relied upon by defendants in the hearing
before Judge Gillis were already set forth in the briefs and
memoranda considered by Judge Foreman and should not have been
reconsidered. We disagree. The Illinois Supreme Court has
repeatedly held that the circuit court has inherent power to
modify or vacate an interlocutory order granting summary judgment
any time before final judgment. Rowe v. State Bank, 125 Ill. 2d
203, 213, 531 N.E.2d 1358 (1988); Towns v. Yellow Cab Co., 73
Ill. 2d 113, 121, 382 N.E.2d 1217 (1978); Leopold v. Levin, 45
Ill. 2d 434, 446, 259 N.E.2d 250 (1970). However, the supreme
court has disapproved of one judge reviewing interlocutory orders
entered by another judge where there is evidence of bad faith or
"judge shopping" by the party who obtains an adverse ruling. 
Rowe, 125 Ill. 2d at 214; see People ex rel. Phillips Petroleum
Co. v. Gitchoff, 65 Ill. 2d 249, 357 N.E.2d 534 (1976). Here,
there is no evidence of bad faith on the part of the defendants
in renewing their motions for summary judgment. Nor is there
evidence of "judge shopping," as the record shows that the cause
was assigned to another judge in the ordinary course of judicial
reassignment. Therefore, we believe that the trial court acted
within the bounds of its authority in ruling on defendants'
motion for summary judgment. See Rowe, 125 Ill. 2d at 214; Pack
v. Santa Fe Park Enterprises, Inc., 209 Ill. App. 3d 648, 655,
568 N.E.2d 360 (1991).
 Next, plaintiff contends that the court erred as a matter of
law when it made findings of fact in granting the motions for
summary judgment. In its order, the trial court found as
follows:
 "1. That on December 10, 1993, Judge Foreman entered an
 order dismissing Counts IV and V of the Second Amended
 Complaint as to all defendants. 2. Plaintiff has offered
 no credible or admissible evidence that defendants solicited
 the Allstate account prior to December 31, 1990. 3. That
 the renting of office space, buying and leasing furniture
 and equipment, leasing of telephones, copying equipment and
 the like, establishing banking relationships, the minor use
 of Dowd & Dowd's office space and supplies to draft letters,
 obtaining Federal identification numbers and the like are
 preparatory to setting up a law firm and, as such, under the
 Veco and Ellis cases, are not actionable." 
 As stated earlier, a trial court should grant a motion for
summary judgment only when no genuine issue of material fact
exists. When granting that motion, a trial court resolves only
questions of law. By definition, a trial court should deny
summary judgment if it must make "findings of fact." Wright v.
St. John's Hospital of the Hospital Sisters of the Third Order of
St. Francis, 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070 (1992).
Here, however, we do not believe that the trial court was making
findings of fact when it entered the order. We believe that the
court made statements which explained its reasons for ruling on
the motions for summary judgment. In any event, in determining
whether the record reveals disputed issues of material fact, we
may rely on any grounds called for by the record and we are not
bound by the trial court's reasoning. See Makowski, 249 Ill.
App. 3d at 115. 
 Plaintiff also contends that the trial court violated the
rules regarding summary judgment when it weighed the credibility
of witnesses. Specifically, the plaintiff argues that the trial
court erred by giving "zero weight" to the deposition testimony
of Daniel Kummer, a former vice-president of Allstate, regarding
changes at Dowd & Dowd and Allstate giving business to another
firm as early as November 2, 1990. We agree. In granting
summary judgment, the judge must not attempt to weigh the
evidence. In re Estate of Hoover, 226 Ill. App. 3d 422, 427, 589
N.E.2d 899 (1992); Gatlin v. Ruder, 137 Ill. 2d 284, 294, 560
N.E.2d 586 (1990). However, this error is harmless because an
appellate court reviews a trial court's grant of summary judgment
de novo and affords the trial court's decision no deference. 
Martin v. State Journal-Register, 244 Ill. App. 3d 955, 962, 612
N.E.2d 1357 (1993).
 II
 We first address the question of law certified by the trial
court pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R.
308(a)) because it is a foundation for disposing of other issues
presented in the case. Appeals under Rule 308 should be
available only in the exceptional case where there are compelling
reasons for rendering an early determination of a critical
question of law and where a determination of the issue would
materially advance the litigation. Kincaid v. Smith, 252 Ill.
App. 3d 618, 622, 625 N.E.2d 750 (1993). Consequently, our
review is strictly limited to the question certified by the trial
court. McMichael v. Michael Reese Health Plan Foundation, 259
Ill. App. 3d 113, 116, 638 N.E.2d 1117 (1994). This court should
not expand upon the question to answer other issues that might
have been included or rule on the propriety of any underlying
order. McMichael, 259 Ill. App. 3d at 116; Danner v. Norfolk &
Western Ry. Co., 271 Ill. App. 3d 598, 601, 648 N.E.2d 603
(1995). Therefore, although plaintiff and defendants have
included discussion regarding the propriety of the trial court's
order denying summary judgment on the fiduciary duty count, we
will limit our discussion to the question certified by the trial
court. See Danner, 271 Ill. App. 3d at 601; Kincaid, 252 Ill.
App. 3d at 621.
 The court identified the question of law as follows:
 "Whether the plaintiff law firm, a professional corporation,
 has a cause of action for breach of fiduciary duties against
 its former Officers or Directors who:
 a. Departed the plaintiff firm without notice to the other
 Officers or Directors;
 b. Had accomplished substantial planning of their departure
 before leaving; and planned to solicit business or clients
 of Dowd and Dowd; 
 c. Had made substantial arrangements, in terms of new
 office space, telephones, equipment, obtaining a federal
 employer identification number, etc., without knowledge of
 the Officers or Directors;
 d. Where more than one Officer or Director, and other
 support staff, left simultaneously, from the Plaintiff firm;
 e. But, where there is no evidence that legal clients or
 legal business were solicited or sought before the
 departure. On the other hand, where there is no evidence
 that the defendants, departing Officers and Directors
 solicited clients or sought the firm's legal business before
 departing, should the claim of plaintiff, a professional
 corporation be dismissed (the Court certifies sub-paragraph
 e above over Plaintiff's objection as to the question of the
 existence of solicitation)."
 In the absence of fraud, a contractual restrictive covenant,
or the improper taking of a customer list, former employees may
compete with their former employers and solicit former customers
provided there was no demonstrable business activity before
termination of employment. Dowell v. Bitner, 273 Ill. App. 3d
681, 691, 652 N.E.2d 1372 (1995). However, corporate officers
owe a fiduciary duty of loyalty to their corporate employer not
to (1) actively exploit their positions within the corporation
for their own personal benefit, or (2) hinder the ability of a
corporation to continue the business for which it was developed.
H. Vincent Allen & Associates, Inc. v. Weis, 63 Ill. App. 3d 285,
291, 379 N.E.2d 765 (1978); Smith-Schrader Co. v. Smith, 136 Ill.
App. 3d 571, 577, 483 N.E.2d 283 (1985). The resignation of an
officer, however, will not sever liability for transactions
completed after the termination of the party's association with
the corporation or transactions that began during the existence
of the relationship or were founded on information acquired
during the relationship. Veco Corp. v. Babcock, 243 Ill. App. 3d
153, 161, 611 N.E.2d 1054 (1993); Dowell, 273 Ill. App. 3d at
691. 
 Application of the aforementioned legal principles to the
case sub judice demonstrates that plaintiff stated a cause of
action for breach of fiduciary duty. As a fiduciary, the
corporate officer owes, at the very minimum, an obligation to
deal honestly and fairly with his corporation. Unichem Corp. v.
Gurtler, 148 Ill. App. 3d 284, 290, 498 N.E.2d 724 (1986). 
Because defendants are corporate officers, their decisions that
affect the corporation must be disclosed. Leslie Henkels, a
former paralegal with Dowd & Dowd, testified in her deposition
that on or about August 6, 1990, the defendants informed her that
they had decided to form their own firm. However, it is
undisputed that defendants failed to inform plaintiff that
defendants were going to start their own law firm until their
resignations. 
 Defendants' prewalkout activities also support the view that
they were less than honest or aboveboard in dealing with the
corporation. Henkels testified that in the fall of 1990,
defendants told her to update and copy service lists of all the
environmental department coverage cases in preparation for
starting the new firm. She also testified that in late 1990,
Maureen Gleason directed her to update a reference manual that
listed plaintiff's asbestos/environmental departmental cases. 
Also, by November 7, 1990, defendants had obtained a lease to
rent office space, ordered office equipment and furniture,
applied for a $400,000 line of credit from Harris Bank and
obtained a federal employer identification number.
 Although defendants contend that they did not solicit Dowd &
Dowd employees until after their resignations, there is some
evidence that tends to contradict this contention. Henkels
testified that she and other Dowd & Dowd employees were solicited
before December 31, 1990. Henkels stated that she attended a
formal meeting with Shreffler, Gleason and others to discuss
which people GMS wanted to take with them. Maureen Gleason
testified that she decided to join GMS in late October or early
November 1990 after discussions with Nancy Gleason, Judith
Gleason and Douglas Shreffler. In the end, more than 25
employees of Dowd & Dowd were hired to work for GMS. 
 There was also some evidence regarding pretermination
solicitation of Allstate. Allstate employees Lynn Crim and
George Riley testified that the defendants did not solicit
Allstate until after December 31, 1990. However, Henkels
testified that before December 31, 1990, one of the defendants
informed her that they were able to proceed with walkout
activities because GMS had obtained Allstate as a client. 
Henkels further testified that on December 31, 1990, Nancy
Gleason directed her to collect and destroy copies of Allstate
representative George Riley's letter transferring files to GMS.
Also, Timothy Nolan, a former attorney employed by GMS, testified
that Virginia Vermillion, a GMS attorney, admitted to him that
GMS had obtained Allstate as a client long before defendants left
Dowd & Dowd. Perhaps the strongest evidence that defendants
solicited Allstate before their resignations comes from the
credit memorandum prepared by Harris Bank vice-president David
Varnerin. The memo stated, inter alia, that "Allstate stands
ready to give them as much business as they can handle" and
"Discussions have been held with their principal client--
Allstate. The firm has been assured that their invoices will be
paid promptly within 30 days."
 Accordingly, based on the foregoing evidence of defendants'
pretermination activities, we believe that the plaintiff
sufficiently stated a cause of action for breach of fiduciary
duty.
 III
 Plaintiff contends that the trial court erred in dismissing
GMS as a party defendant. Specifically, plaintiff argues that
the court erred in ruling that GMS was not part of a civil
conspiracy to injure plaintiff. Civil conspiracy consists of a
combination of two or more persons for the purpose of
accomplishing by some concerted action either an unlawful purpose
or a lawful purpose by unlawful means. Smith v. Eli Lilly & Co.,
137 Ill. 2d 222, 235, 560 N.E.2d 324 (1990). The necessary
elements of civil conspiracy include: (1) an agreement between
two or more persons; (2) to participate in an unlawful act, or a
lawful act in an unlawful manner; (3) an injury caused by an
unlawful overt act performed by one of the parties; and (4) the
overt act was done pursuant to and in furtherance of the common
scheme. Vance v. Chandler, 231 Ill. App. 3d 747, 750, 597 N.E.2d
233 (1992). The function of a conspiracy claim is to extend
liability in tort beyond the active wrongdoer to those who have
merely planned, assisted or encouraged the wrongdoer's acts. 
Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 64, 645 N.E.2d 888
(1994).
 Plaintiff argues that GMS is a proper party defendant
because Gleason and Shreffler committed conspiracy by entering
into an agreement to injure Dowd & Dowd and its assets through
participation in unlawful acts or lawful acts in an unlawful
manner. Therefore, GMS, the entity of the conspiracy used by
Gleason and Shreffler, should not have been dismissed from the
case. Plaintiff relies on Preferred Meal Systems, Inc. v. Guse,
199 Ill. App. 3d 710, 557 N.E.2d 506 (1990), to support its
argument. In Preferred, the plaintiff corporation brought suit
seeking injunctive relief against former officers and the new
entity the former officers formed, for violation of a contract
not to compete and breach of their fiduciary duties. The trial
court refused to enjoin the officers and the newly created
company. The appellate court reversed, holding that the officers
as well as the new company should be enjoined, "considering that
it was the instrumentality employed by [the former officers] in
implementing and perfecting the breach of their duty to [the
plaintiff]." Preferred, 199 Ill. App. 3d at 726. 
 Plaintiff argues that, similar to the defendant company in
Preferred, GMS is a "refraction" of Gleason's and Shreffler's
conduct and is the "creature spawned" by them. See Preferred, 199
Ill. App. 3d at 727. On the other hand, defendants argue that the
civil conspiracy cannot stand because civil conspiracy is not an
independent cause of action in Illinois. However, our supreme
court in Adcock unequivocally states that "civil conspiracy is a
recognized cause of action in Illinois." Adcock, 164 Ill. 2d at
62. To state a cause of action for conspiracy, a plaintiff must
allege not only that one of the conspirators committed an overt
act in furtherance of the conspiracy, but also that such act was
tortious or unlawful in character. Adcock, 164 Ill. 2d at 63. 
 Defendant also argues that even if a cause of action exists
for civil conspiracy, it is duplicative of other counts alleged. 
We agree. The allegations pled in the second amended complaint
to support the conspiracy count were the same acts pled in the
breach of fiduciary and other counts. Also, plaintiff did not
plead that the damages suffered by the breach of fiduciary duty
were different from the damages suffered by the conspiracy claim. 
Although conspiracy is part of the consideration for the
fiduciary duty claim, plaintiff cannot have both a claim for
civil conspiracy and for breach of fiduciary duty. Therefore,
the trial court properly dismissed the civil conspiracy claim
against GMS. See Rumbold v. Town of Bureau, 221 Ill. App. 3d
222, 230, 581 N.E.2d 809 (1991).
 IV
 Plaintiff next contends that the trial court erred in ruling
that GMS was not liable for willful and wanton conduct. 
Plaintiff argues that this is a question of fact to be resolved
by the jury based on the circumstances of the case. Defendants
argue that the trial court properly granted summary judgment on
this count because the complaint failed to state a claim for
willful and wanton conduct. We must agree with the trial court
because our supreme court has stated that "[t]here is no separate
and independent tort of 'willful and wanton' misconduct." Ziarko
v. Soo Line R.R. Co., 161 Ill. 2d 267, 274, 641 N.E.2d 402
(1994); see Mucklow v. John Marshall Law School, 176 Ill. App. 3d
886, 894-95, 531 N.E.2d 941 (1988). The label "willful and
wanton conduct" is used to characterize conduct necessary to
sustain an action for negligent or intentional behavior. Ziarko,
161 Ill. 2d at 275. When the plaintiff is alleging that the
defendant engaged in willful and wanton conduct, such conduct
must be shown through well-pled facts, and not be merely
labelling the conduct willful and wanton. Winfrey v. Chicago
Park District, 274 Ill. App. 3d 939, 943, 654 N.E.2d 508 (1995). 
Conclusional statements of fact or law will not suffice to state
a cause of action regardless of whether they succeed in generally
informing the defendant of the nature of the claim against him or
her. Winfrey, 274 Ill. App. 3d at 943; Adkins v. Sarah Bush
Lincoln Health Center, 129 Ill. 2d 497, 519-20, 544 N.E.2d 733
(1989).
 In the instant case, the trial court found that plaintiff's
allegations for willful and wanton misconduct were duplicative of
allegations in other counts for punitive damages. We agree with
the trial court. The count for willful and wanton conduct was
based on facts already alleged in other counts. Furthermore, a
claim based on willful and wanton conduct seeks punitive damages
based on wrongful conduct that rises to a level above mere
negligence. Because plaintiff seeks punitive damages in its
prayers for relief in all of the counts except count II,
plaintiff's cause of action for willful and wanton conduct is
duplicative, and the trial court properly dismissed GMS as a
defendant to this claim. See Swick v. Liautaud, 169 Ill. 2d 504,
662 N.E.2d 1238 (1996)
 V
 Plaintiff also contends that the trial court erred in ruling
that defendants did not interfere with plaintiff's prospective
economic advantage. In order to successfully plead an action for
interference with prospective economic advantage, one must plead: 
(1) the existence of a valid business relationship or expectancy;
(2) knowledge of the relationship or expectancy on the part of
the interferer; (3) intentional interference inducing or causing
a breach or termination of the relationship or expectancy; and
(4) resultant damage to the party whose relationship or
expectancy has been disrupted. Galinski v. Kessler, 134 Ill.
App. 3d 602, 607, 480 N.E.2d 1176 (1985); Parkway Bank & Trust
Co. v. City of Darien, 43 Ill. App. 3d 400, 357 N.E.2d 211
(1976). 
 Defendants argue that plaintiff had no business expectancy
with Allstate because Allstate would have terminated the
relationship with Dowd & Dowd even if Gleason had not agreed to
represent Allstate. We disagree. The fact that a relationship
between an attorney and his client is terminable at will does not
ipso facto defeat an action for tortious interference because the
action is not dependent upon an enforceable contract but, rather,
upon an existing relationship. Anderson v. Anchor Organization
for Health Maintenance, 274 Ill. App. 3d 1001, 1013, 654 N.E.2d
675 (1995). In the instant case, plaintiff had a valid 14-year
business relationship with Allstate and an expectancy of a
continuing relationship. Gleason and Shreffler knew of this
existing relationship and of plaintiff's expectancy that the
relationship would continue. We cannot say that a trier of fact
cannot find that defendants breached fiduciary duties and caused 
the termination of the relationship or expectancy between
plaintiff and Allstate with resultant damage to the plaintiff.
Thus, in viewing the evidence, we believe that the trial court
improperly granted summary judgment for this count. 
 VI
 Plaintiff next argues that the trial court erred in ruling
that defendants were not required to give 90 days' written notice
before their resignations. Paragraph 4 of the employment
agreements signed by Gleason and Shreffler provides:
 "4. Term of employment. The term of the employee's
 employment hereunder shall be from the date hereof until the
 end of the Corporation's current fiscal year and from year
 to year thereafter, subject to termination at any time upon
 90 days prior written notice either by the Corporation
 (acting by unanimous vote of the Board of Directors,
 excluding the Employee if he is a Board member) to the
 Employee or by the Employee to the Corporation."
It is axiomatic that when a contract is judicially interpreted,
the primary goal is to discover and give effect to the intent of
the parties at the time they entered into the contract. Old Kent
Bank-St. Charles N.A. v. Surwood Corp., 256 Ill. App. 3d 221,
228, 627 N.E.2d 1192 (1994). In construing the terms of the
contract, a court looks first only to the language employed by
the parties in describing their intent; if such language is clear
and unambiguous, it will be given its natural and ordinary
meaning. Old Kent Bank, 256 Ill. App. 3d at 228; Lenzi v.
Morkin, 103 Ill. 2d 290, 293, 469 N.E.2d 178 (1984). Under the
general rules of contract construction, the determinative factor
is the intention of the parties, which can best be determined by
considering the contract as a whole, reviewing each part in light
of the others. Dolezal v. Plastic & Reconstructive Surgery, 266
Ill. App. 3d 1070, 1080, 640 N.E.2d 1359 (1994). 
 Defendants argue that they did not breach their contract
because it expired by its own terms as of December 31, 1990, and
they elected not to renew their contracts. We note that the
trial court ruled that Gleason and Shreffler did not have to give
any notice within the last quarter of any year. On appeal,
neither party embraces the trial court's interpretation of the
notice required to terminate. The agreement unambiguously
provides that employment is "subject to termination at any time
upon 90 days prior written notice" either by the corporation or
the employee. We believe that both the defendants' and the trial
court's interpretations of the contract are contrary to the
express language of the contract and disregard the purpose of the
90-day provision. We believe that the trial court's
interpretation can permit the employer to lock out the employee 
on January 1 of any year without any prior notice, on the one
hand, and can also permit the employee, without prior notice, to
leave work permanently on December 31 of any year, on the other
hand. Clearly such was not the intent of the parties. The
purpose of the notice is to allow the parties the opportunity to
fulfill existing obligations and responsibilities to the
employer, employee and the client. Contrary to the trial court's
interpretation, there is no reason why this purpose should not be
applicable during the last three months of the year or the last
day of the year. We agree with plaintiff's contention that the
intent of the parties and the purpose of the provision are to
require 90 days prior written notice by either party at any time.
Accordingly, we hold that the trial court improperly granted
defendants' motion for summary judgment for breach of the 90-day
notice provision. 
 VII
 Plaintiff also contends that the trial court incorrectly
applied Rule 5.6 of the Rules of Professional Conduct (134 Ill.
2d R. 5.6) retroactively to negate terms of the employment
contracts. The provisions in the employment agreements on which
plaintiff relies state:
 "10. Nonsolicitation. During the term of this Agreement and
 for a period of two (2) years following the termination of
 this Agreement, the Employee will not directly or
 indirectly, solicit or endeavor to entice away any clients
 of the Corporation without the prior written consent of the
 Corporation. For the purpose of this subsection, the term
 'solicit' shall mean to call or contact or to lend
 assistance in any way to any person or entity in calling or
 contacting a client of the Corporation in a manner
 detrimental to the business of the corporation***."
On August 1, 1990, Rule 5.6 became effective and states:
 "A lawyer shall not participate in offering or making: 
 (a) a partnership or employment agreement that restricts the
 rights of a lawyer to practice after termination of the
 relationship, except an agreement concerning benefits upon
 retirement***." 134 Ill. 2d R. 5.6(a).
 The provision set forth in Rule 5.6 clearly prohibits the
plaintiff's employment agreement regarding nonsolicitation of
clients. Plaintiff argues that Rule 5.6 does not apply because
it was enacted over two years after Gleason and Shreffler signed
the noncompetition agreements in the case sub judice. As a
result, plaintiff argues that to invalidate the noncompetition
clause, which was signed before August 1, 1990, would be ex post
facto legislation. We disagree. The supreme court has exclusive
jurisdiction to regulate attorney conduct. See People ex rel.
Brazen v. Finley, 119 Ill. 2d 485, 494, 519 N.E.2d 898 (1988).
Supreme court rules are not analogous to penal laws enacted by a
legislative branch of government and are not governed by the
statutory prohibition against ex post facto laws. See In re
Samuels, 126 Ill. 2d 509, 524, 535 N.E.2d 808 (1989). We believe
that, for public policy reasons, such as protecting the public's
right to access to counsel, the supreme court intended that Rule
5.6 apply to all contracts existing at the time the rule went
into effect. See Lewis, Today's Associate, Tomorrow's
Competitor: New Rules Doom Noncompetition Agreements, 79 Ill.
B.J. 330 (1991). 
 VIII
 Plaintiff next contends that the trial court erred in
granting summary judgment in favor of Gleason and Shreffler on
their counterclaim for the repurchase of the shares of stock
owned by Gleason and Shreffler. At issue are two documents that
Gleason and Shreffler signed. The first document provides, in
pertinent part:
 "1.1 Purchase Obligation. Upon the death, total disability,
 or termination of employment with the Company (for whatever
 reason) of Shareholder ('Event of Redemption'), the Company
 shall purchase, and the Shareholder or the estate of a
 deceased Shareholder shall sell to the Company all of the
 shares of the Company owned by Shareholder, whether now
 owned or hereafter acquired. The purchase price of such
 share shall be computed in accordance with the provisions of
 Section 1.2 of this Agreement ***. 
 1.2 Purchase Price. The purchase price per share for 
 purposes of Section 1.1 hereof shall be $10,000.
 4.5 If any time payments are to be made under this
 Agreement to the Shareholder or Shareholder's beneficiary or
 beneficiaries, the Shareholder or any beneficiary is
 indebted to the Company, then the Company, in its
 discretion, may withhold any payment, in whole or in part,
 and apply such withheld amount to the payment or partial
 payment of such indebtedness."
A second group of documents, the employment agreements state:
 "In addition to any damages which the Corporation may be
 entitled in the event of Employee's breach of the covenants
 therein, the Corporation shall be entitled to (a) set off
 its damages against any amounts due to the Employee from the
 Corporation as severance pay, wages, payment for stock or
 otherwise, and/or (b) preliminary and injunctive relief."
Plaintiff asserts that by reading these documents together, it is
clear under the language of paragraph 4.5 that plaintiff had a
right to set off its damages resulting from defendants' breaches
of the nonsolicitation and nondisclosure of confidential
information provisions against any amounts due to them for
"payment of stock" or "debt" under the share purchase agreements. 
Plaintiff concludes that because the corporation suffered damage
far in excess of the purchase price of the stock, defendants are
not entitled to recover any amount for the redemption of their
shares. Conversely, defendants argue that plaintiff was
obligated to buy the shares that Gleason and Shreffler owned when
they left the firm for "whatever reason." Therefore, defendants
conclude that the reason for the departure was irrelevant.
 Defendants cite Anderson v. Burton Associates, Ltd., 218
Ill. App. 3d 261, 578 N.E.2d 199 (1991). We believe Anderson is
applicable to the case sub judice. In Anderson, a minority
shareholder left an accounting firm. The firm argued that it was
justified in refusing to honor an agreement to purchase his
shares because he had solicited clients prior to leaving the
firm. The court held that the breach of the plaintiff's duty was
not a proper affirmative defense because the shareholder's
agreement provided the plaintiff with the right to have his stock
redeemed. Anderson, 218 Ill. App. 3d at 266. 
 We agree with the plaintiff's assertion that the first
document and the second group of documents must be read together.
Similar to Anderson, we do not believe that breach of fiduciary
duty is a proper affirmative defense because the shareholder's
agreement provides for the defendants in the instant case to have
their stock redeemed. Also, similar to Anderson, we do not
believe that plaintiff is entitled to a right to have an
unconditional setoff at this time. This is because, at this
juncture, the right to a setoff is both inchoate and speculative.
Also, plaintiff has averred that the value of the corporation has
been diminished due to the alleged solicitation of Allstate. It
is conceivable that Gleason's and Shreffler's liability to
plaintiff may exceed what is due Gleason and Shreffler pursuant
to the stock purchase agreement. Therefore, we affirm the entry
of summary judgment in favor of defendants entitling Gleason and
Shreffler to have their shares redeemed under the shareholder's
agreement. However, under the circumstances and in fairness to
plaintiff, on remand of the case to the trial court, the trial
court is hereby instructed to stay enforcement of the repurchase
of the shares until final adjudication of the plaintiff's claim
for breach of fiduciary duty. See Anderson, 218 Ill. App. 3d at
267-68.
 IX 
 Defendants contend on cross-appeal that the trial court
erred in denying their motion for sanctions. Defendants based
their motion for sanctions on Supreme Court Rule 137 (134 Ill. 2d
R. 137), which states in pertinent part:
 "The signature of an attorney or party constitutes a
 certificate by him that he has read the pleading, motion or
 other paper; that to the best of his knowledge,
 information, and belief formed after reasonable inquiry it
 is well grounded in fact and is warranted by existing law or
 a good-faith argument for the extension, modification, or
 reversal of existing law, and that it is not interposed for
 any improper purpose, such as to harass or to cause
 unnecessary delay or needless increase in the cost of
 litigation."
Because this rule is penal in nature, it must be strictly
construed. Bennett & Kahnweiler, Inc. v. American National Bank
& Trust Co., 256 Ill. App. 3d 1002, 1006, 628 N.E.2d 426 (1993). 
The standard for evaluating a party's conduct under this rule is
one of reasonableness under the circumstances existing at the
time of the filing. The party requesting sanctions is obligated
to show that the opposing party made assertions of fact that were
untrue and were made without reasonable cause. In re Estate of
Wernick, 127 Ill. 2d 61, 77, 535 N.E.2d 876 (1989). The
determination of whether to impose sanctions or to award attorney
fees rests within the sound discretion of the trial court, and
that decision is entitled to great weight and will not be
disturbed on review absent an abuse of discretion. Bennett &
Kahnweiler, Inc., 256 Ill. App. 3d at 1007. 
 Defendants contend that plaintiff failed to conduct a
reasonable inquiry before filing the case. Defendants base this
contention on Michael Dowd's deposition testimony in which he
stated that he did not make an investigation on whether
defendants solicited the Allstate account before leaving the
firm. However, as we discussed earlier regarding count I for
breach of fiduciary duty, there was enough evidence apparent to
Dowd without conducting a formal investigation.
 Defendants also contend that the complaint was not well
grounded in fact because Riley and Crim flatly and repeatedly
denied that any pre-December 31, 1990, solicitation had taken
place. However, plaintiff was not obligated to believe Riley and
Crim and, in fact, elicited credible testimony from other
witnesses refuting Riley's and Crim's claims.
 Finally, defendants argue that the suit was filed for an
improper purpose. Defendants base this contention on the
deposition testimony of Michael Dowd where he stated that he
filed suit to obstruct Nancy Gleason and Douglas Shreffler from
taking his business away from him. Defendants claim that the
case was, therefore, founded on vengeance, and prosecuted with
spite. We disagree. Since we consider some of Dowd's
contentions to be meritorious, we cannot say that vengeance was
Dowd's primary purpose for filing the suit in the case sub
judice.
 Accordingly, for the foregoing reasons, the judgment of the
circuit court of Cook County is affirmed in part and reversed in
part and this cause is remanded for further proceedings
consistent with this opinion.
 Affirmed in part and reversed in part; cause remanded.
 McNULTY, P.J., and GORDON, J., concur.